COURT OF APPEALS
DECISION
DATED AND FILED

August 20, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP1863-CR**

Cir. Ct. No. **2016CT83**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TRACI LYNN BUSHA,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

¶1     SEIDL, J.[1]  Traci Busha appeals a judgment convicting her of third-offense operating a motor vehicle while intoxicated (OWI).  Busha contends the circuit court erred by denying her motion to suppress statements that she made

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

to a police officer before she received *Miranda*[2] warnings. We conclude Busha was not in custody at the time she made the statements in question, and, as such, *Miranda* warnings were not required. We therefore affirm.

## BACKGROUND

¶2 City of Superior police officer Gary Gothner was the only witness to testify at the hearing on Busha's suppression motion. The following facts are taken from Gothner's testimony and from our review of a video recorded by his body camera, which was entered into evidence during the suppression hearing.

¶3 Just before 10:00 p.m. on May 6, 2016, Gothner was dispatched to investigate a report of a vehicle in a ditch. When he arrived at the scene, he found a car "listing deeply in the ditch" at "roughly … a 45-degree angle," with its passenger side lower in the ditch than its driver's side. It appeared as though the vehicle's tires had been spinning in an effort to get out of the ditch.

¶4 When Gothner approached the vehicle he saw that there was only one person inside—a female seated in the front passenger seat. He opened the driver's side door of the vehicle, which he then had to hold open due to the angle of the vehicle, and identified the lone occupant as Busha.

¶5 Gothner asked Busha what was going on, and she replied that "Scott," her boyfriend, was supposed to be coming to get her. Busha denied that she had been driving the vehicle and told Gothner that Scott had been driving. When Gothner asked about Scott's whereabouts, Busha reiterated that he was "on

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

his way" and was "supposed to be coming to get [her]." However, while Gothner was speaking to Busha, it appeared she was trying to use her phone to communicate her location to Scott. Busha confirmed that she owned the vehicle and provided Gothner with her insurance information. Busha admitted drinking alcohol, and Gothner observed a beer can on the floor of her vehicle.

¶6     Gothner then told Busha, "Well, let's start with getting you a wrecker here," and Busha responded, "Okay." Gothner radioed dispatch to request a wrecker, while continuing to stand next to Busha's vehicle and hold the door open. Shortly thereafter, a second officer approached the vehicle. Busha asserts—and the State does not dispute—that the second officer asked Busha to get out of her vehicle, and Busha refused to do so.[3]

¶7     As Busha and the officers waited for the wrecker to arrive, Gothner continued to question Busha about Scott's whereabouts. Gothner then asked Busha, "How do I know you're not fibbing to me?" Busha denied lying to Gothner. Gothner continued questioning Busha about the alcohol she and Scott had consumed that night, where Scott might have gone, and the route Busha claimed they had taken before driving into the ditch.

¶8     Gothner then asked Busha whether she could call Scott. While the officers waited for Busha to do so, Gothner told Busha, "I'm really having a hard time believing what you're telling me, Miss Busha." The second officer then

---

[3] Busha cites Gothner's body camera video in support of her claim that the second officer asked her to get out of her vehicle. However, the audio at the cited portion of the video is not of sufficient quality for this court to confirm whether that exchange occurred. Nevertheless, because the State does not dispute Busha's assertion regarding the exchange in question, we accept as true Busha's claim that the second officer asked her to get out of her vehicle, and she refused.

suggested that Gothner should have Busha get out of the car to see whether she smelled like alcohol. Gothner responded that Busha had admitted to being "bombed," but he did not believe he could "put her behind the wheel."

¶9 Shortly thereafter, Busha succeeded in reaching Scott and agreed to allow Gothner to speak to him. Gothner spoke with Scott for less than one minute before Busha's phone lost the connection. At that point, Gothner told Busha, "Okay Traci, time to climb out." Busha then exited the vehicle through the driver's side door.

¶10 After Busha got out of her vehicle, Gothner directed her to stand in front of his supervisor's SUV.[4] The following exchange then occurred:

> Gothner: Now, you know, I've been really nice.
>
> Busha: Yes.
>
> Gothner: I've been very patient.
>
> Busha: Yes, you have.
>
> Gothner: And I've been trying to believe you.
>
> Busha: Yes.
>
> Gothner: But you know what, I don't believe you.
>
> Busha: I know.
>
> Gothner: So I think we need to start telling the truth. Do you agree with that?
>
> Busha: Yes.
>
> Gothner: Okay.
>
> Busha: Okay.

---

[4] The record does not indicate when Gothner's supervisor arrived at the scene.

Gothner: So. Why don't we start from the top?

Busha: Okay.

Gothner: What happened?

¶11     Busha subsequently admitted, in response to Gothner's questions, that she had been driving the vehicle, that she was consuming alcohol while driving, and that there was no one else in the vehicle with her. Following the administration of field sobriety tests and a preliminary breath test, Busha was placed under arrest for OWI.

¶12     In support of her motion to suppress, Busha argued she was in custody at the time she admitted that she, not Scott, was driving her vehicle. Because Busha had not yet received **Miranda** warnings at that time, she argued her statements to Gothner should be suppressed, along with all other evidence that the police obtained after she made those statements. The circuit court disagreed and denied Busha's suppression motion. The court reasoned that Gothner's questioning of Busha was a "consensual encounter" and that, under the circumstances, "a reasonable person … wouldn't feel like they were in custody."

¶13     Busha subsequently entered a no contest plea to the OWI charge. She now appeals, arguing the circuit court erred by denying her suppression motion.

## DISCUSSION

¶14     When reviewing a circuit court's decision on a motion to suppress, we apply a two-step standard of review. **State v. Eason**, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We will uphold the circuit court's factual findings

unless they are clearly erroneous. *Id.* However, we independently review whether those facts violate constitutional principles. *Id.*

¶15 Law enforcement must provide *Miranda* warnings before interrogating an individual who is in custody. *State v Mitchell*, 167 Wis. 2d 672, 686, 482 N.W.2d 364 (1992). In this case, the State concedes that Gothner interrogated Busha when he told her he did not believe her story and asked her to tell the truth about what happened. The only disputed issue is whether Busha was in custody at that time.

¶16 A defendant is in custody for purposes of *Miranda* if, under the totality of the circumstances, a reasonable person in the defendant's position would have considered himself or herself to be in custody. *State v. Gruen*, 218 Wis. 2d 581, 593, 582 N.W.2d 728 (Ct. App. 1998). Factors relevant to this analysis include the defendant's freedom to leave the scene; the purpose, place, and length of the interrogation; and the degree of restraint. *Id.* at 594. When assessing the degree of restraint, courts have considered: (1) whether the defendant was handcuffed; (2) whether a gun was drawn on the defendant; (3) whether the defendant was frisked; (4) the manner in which the defendant was restrained; (5) whether the defendant was moved to another location; (6) whether the questioning took place in a police vehicle; and (7) the number of police officers involved. *Id.* at 594-96. The ultimate inquiry is "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *State v. Lonkoski*, 2013 WI 30, ¶6, 346 Wis. 2d 523, 828 N.W.2d 552 (citation omitted).

¶17 In this case, we agree with the circuit court that a reasonable person in Busha's position would not have believed herself to be in custody at the time

6

she made the incriminating statements to Gothner. Busha's vehicle was not stopped by law enforcement. Instead, police responded to the scene because Busha's vehicle was stuck in a ditch. Only about fifteen minutes elapsed between the time Gothner first made contact with Busha and the time she made the statements in question. During that time, Busha was not handcuffed, frisked, or placed in a police vehicle. She was not told that she was under arrest or that she was not free to leave. Although there were apparently three officers at the scene, only two of them interacted with Busha before she made the incriminating remarks. In addition, while Gothner and the second officer were armed and in uniform, neither of them drew their weapons or made any other display of force. Under these circumstances, we agree with the circuit court that Busha was not in custody, for purposes of *Miranda*, when she made the incriminating statements to Gothner.

¶18    Both *Gruen* and *State v. Wortman*, 2017 WI App 61, 378 Wis. 2d 105, 902 N.W.2d 561, support our conclusion that Busha was not in custody. In *Gruen*, a police officer came upon a car stuck in a snow bank at 1:30 a.m. and observed Gruen walking away from the car. *Gruen*, 218 Wis. 2d at 586. The officer stopped Gruen "to determine whether he owned the car or whether he knew who it belonged to." *Id.* The officer was outside his jurisdiction, however, and he therefore told Gruen that he needed to call for another officer from the appropriate municipality. *Id.* at 586-87. Because it was cold outside, the officer asked Gruen if he wanted to have a seat in the officer's police van, and Gruen accepted that offer. *Id.* at 587. The officer frisked Gruen before placing him in the van. *Id.* Once Gruen was inside the van, the officer closed the van's back door, "making it impossible for Gruen to open the door from the inside." *Id.* Gruen was inside the police van for about ten to fifteen minutes before the second officer arrived and

began questioning him. *Id.* at 587-88. On these facts, we concluded Gruen was not in custody when he made incriminating statements to the second officer. *Id.* at 598.

¶19    *Gruen* is similar to the instant case in several respects. Neither Gruen nor Busha were handcuffed. *See id.* at 597-98. In both cases, the defendants were not told that they were under arrest or that they were not free to leave. Both Gruen and Busha interacted with two officers before making incriminating statements, and in each case approximately fifteen minutes elapsed before they made those statements. The officers did not draw their weapons in either case or make any other display of force. Unlike Busha, however, Gruen was stopped by law enforcement, was frisked, and was placed in a police van, the back door of which could not be opened from the inside. Despite these additional factors, we nevertheless concluded that Gruen was not in custody. The absence of these factors in Busha's case further supports our conclusion that Busha was not in custody at the time she made the incriminating statements at issue here.

¶20    In *Wortman*, an officer responded to a report of a truck in a ditch. *Wortman*, 378 Wis. 2d 105, ¶2. The officer saw Wortman walking away from the scene and stopped him. *Id.* Wortman admitted that he was the driver of the truck. *Id.* After observing indicia of intoxication, the officer "told Wortman to get in the squad car so they could return to the scene of the accident," and Wortman complied with that directive. *Id.*

¶21    Wortman ultimately moved to suppress incriminating statements he made to the officer who stopped him. *Id.*, ¶4. The circuit court concluded Wortman was not in custody when he made those statements, and we affirmed that decision on appeal. *Id.*, ¶¶4, 11. We noted that "[t]he entire encounter, from

investigatory stop to arrest, took approximately fifteen minutes." *Id.*, ¶11. We further noted that "[u]ntil his arrest, Wortman was not in handcuffs, was not held for an extended period of time in the squad car, and was not frisked." *Id.* We also rejected Wortman's argument that he was in custody when he made the relevant statements because the officer had not yet returned his driver's license at that time. *Id.*

¶22 Here, as in *Wortman*, Busha was not handcuffed or frisked, and only about fifteen minutes elapsed before she made the incriminating statements in question. However, unlike the defendant in *Wortman*, Busha was not placed in a police vehicle or transported to a different location. Our conclusion that Wortman was not in custody, despite those additional facts, therefore supports our conclusion that Busha was not in custody in this case. *Wortman* also defeats Busha's argument that she was in custody when she made the incriminating statements because Gothner had not yet returned her driver's license at that time. *See id.*; *see also State v. Quartana*, 213 Wis. 2d 440, 449-50, 570 N.W.2d 618 (Ct. App. 1997) (stating an officer's failure to return a defendant's driver's license would not necessarily lead a reasonable person in the defendant's position to conclude that he or she was in custody).

¶23 Busha also argues that she was in custody because: (1) Gothner told her to climb out of her vehicle; (2) she was "surrounded by squad cars"; and (3) Gothner "clearly communicated" to her that he believed she was lying and was guilty of a crime. However, Busha views these facts in isolation, without considering the other factors discussed above. *See supra*, ¶17. When determining whether a defendant was in custody for purposes of *Miranda*, we must consider

9

the totality of the circumstances. *See **Gruen***, 218 Wis. 2d at 593. Although the factors Busha cites arguably weigh in favor of custody,[5] after considering the circumstances in their entirety, we conclude Busha was not in custody at the time she made the incriminating statements.

¶24 Finally, Busha relies on ***United States v. Richardson***, 700 F. Supp. 2d 1040 (N.D. Ind. 2010), *aff'd*, 657 F.3d 521 (7th Cir. 2011), to support her claim that she was in custody. However, ***Richardson*** is distinguishable.

¶25 In ***Richardson***, an officer stopped the defendant's vehicle for speeding. *Id.* at 1044. The defendant and his passenger acted nervous during the stop, and when the officer returned to his vehicle to perform a license check, he saw them moving around inside their vehicle and looking back at him. *Id.* at 1044-45. The officer then called for backup. *Id.* at 1045. After two additional officers arrived at the scene, a canine drug sniff was performed, during which the dog alerted at both the driver's side and passenger side doors of the defendant's vehicle. *Id.* The first officer then told the vehicle's occupants that he had

---

[5] Notably, we are not convinced that Busha's being told to climb out of her vehicle supports a determination that she was in custody, under the circumstances of this case. As Busha concedes, prior to that point, the second officer had asked Busha to exit her vehicle, and Busha refused to do so. Busha's initial refusal to exit her vehicle when asked to do so suggests that she did not believe she was required to comply with the officers' requests.

In addition, when asked at the suppression hearing why he told Busha to get out of her vehicle, Gothner responded, "Eventually—couldn't leave the car where it was. Eventually, she's got to get out, so let's move on to the next step here. Let's at least make progress and get her out of the car." It is undisputed that, at the time Gothner told Busha to get out of her vehicle, the vehicle was stuck in a ditch and could not be removed without a wrecker. Busha does not dispute that she would have needed to get out of the vehicle in any event once the wrecker arrived at the scene. Under these circumstances, a reasonable person in Busha's position would not have viewed Gothner's directive to exit the vehicle as an indicator that he or she was in custody. Rather, exiting the vehicle was simply the "next step" that needed to take place before the vehicle could be removed from the ditch.

probable cause to search the vehicle and asked them to get out. *Id.* After the defendant exited the vehicle, the officer conducted a pat-down search of his outer clothing. *Id.* During the search, the officer discovered a bag containing a white rock-like substance in the defendant's pocket. *Id.* The officer asked the defendant what the substance was, and the defendant replied, "[Y]ou know what it is." *Id.* The district court concluded the defendant was in custody when he made that statement because "[n]o reasonable person in [the defendant's] place would have felt free to leave from the instant [the officer] pulled the drugs from [the defendant's] pocket." *Id.* at 1053.

¶26    Busha argues *Richardson* is on point because, like the defendant in that case, she was told to exit her vehicle, multiple police officers were present at the scene, and Gothner clearly communicated that he suspected her of committing a crime. In *Richardson*, however, there were additional factors that supported a conclusion the defendant was in custody. Specifically, the defendant's vehicle was stopped by police, a drug sniff was performed, the officer informed the defendant that there was probable cause to search his vehicle, and the defendant was subjected to a pat-down search. None of these additional factors are present in Busha's case. Their absence supports a determination that—unlike the defendant in *Richardson*—Busha was not in custody at the time she made the incriminating statements.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

11