**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 27, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP897-CR**

Cir. Ct. No.  **2018CF110**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

CURTIS H. BROWN,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Marquette County: MARK T. SLATE, Judge. *Affirmed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Curtis H. Brown appeals a judgment convicting him of operating a motor vehicle while intoxicated (OWI), seventh, eighth, or

ninth offense. Specifically, Brown challenges the circuit court order denying his suppression motion. For the reasons stated below, we affirm.

## BACKGROUND

¶2 The State filed a criminal complaint charging Brown with OWI and operating a motor vehicle with a prohibited alcohol concentration, both as seventh, eighth, or ninth offenses; obstructing an officer; and operating a motor vehicle while revoked. During the course of the circuit court proceedings, Brown filed multiple motions to suppress evidence, a suppression hearing was held at which Deputy Cameron Klump of the Marquette County Sheriff's Office testified, and video from Klump's dashboard camera was submitted to the court.

¶3 The following facts, taken from Klump's testimony at the suppression hearing and the dashboard camera video, are not disputed on appeal.

¶4 At approximately 5:00 p.m. on November 22, 2018, Klump was dispatched to a stretch of rural county highway in response to a report of a motor vehicle crash. Klump encountered Brown walking along the road in close proximity to the reported crash. Klump slowed to a stop, thinking that Brown might have been involved with the reported crash, and Brown voluntarily approached Klump's squad car. Klump testified that "[Brown] stated that he was coming from up the road where his vehicle was involved in -- and he stopped his statement and stated that he was just walking down the road." After stopping and first making contact with Brown, Klump repositioned his squad car so that it was on the shoulder of the road and Klump directed Brown to the front of the squad car so that Brown was not in the way of oncoming traffic. While Klump was

repositioning his squad car, he saw Brown throwing cans into the roadside ditch.[1] After Klump had repositioned his squad car on the shoulder and exited the car, and as he was talking with Brown, Brown removed two more cans from his pocket and threw them in the ditch. At that point, Klump ordered Brown to place his hands on the front of the squad car and then began the process of handcuffing him.

¶5     While Klump was handcuffing Brown, Klump asked Brown questions, and Brown, for the most part, answered those questions. Relevant here, Brown told Klump that what he had thrown into the ditch were cans of Budweiser that he did not want Klump to find on him. Brown also told Klump that he and his mom had been in Grand Marsh looking at property, that his mom was driving and had swerved to miss a deer, that his mom had then gotten a ride with someone, and that the car was in the ditch "up the road here."

¶6     Klump testified that he handcuffed Brown "for my safety as he was wearing large, bulky hunting clothes and I didn't know if he had weapons, and due to his actions." After handcuffing Brown, Klump told him, "You're not under arrest, you're just being detained, because you're throwing stuff in the ditch and you're acting pretty skittish with me."

¶7     Klump then searched Brown's person, had Brown get into the back of the squad car, retrieved the unopened cans of beer that Brown had thrown into the ditch, and drove with Brown a short distance down the road to the crash site. While at the crash site, Klump learned through dispatch that Brown had eight prior

---

[1] Klump testified at the suppression hearing that at the time of his observations, he believed these items to be "can[s] of some sort." In the dashboard camera video, Klump can be heard saying into his radio that "[Brown] just threw two beer cans into the ditch."

OWI convictions and was accordingly subject to a .02 blood-alcohol-concentration (BAC) restriction. *See* WIS. STAT. § 340.01(46m)(c) (2021-22) (reducing prohibited BAC to .02 for individuals with three or more prior convictions, suspensions, or revocations).[2]  Klump drove Brown to the sheriff's office to conduct field sobriety testing and administer a preliminary breath test.  Klump placed Brown under arrest after the results of the preliminary breath test revealed a BAC of .135.  Klump subsequently obtained a warrant for a blood draw, which revealed a BAC of .121.

¶8      During the course of the circuit court proceedings, Brown was represented by several different attorneys who filed several different motions to suppress.  In his initial suppression motion, Brown argued that he was arrested when he was transported approximately 17 miles to the sheriff's office for field sobriety testing, and that the arrest was unlawful because it was not supported by probable cause.  Although Brown later suggested that the arrest occurred at various other points in time, at the subsequent suppression hearing, Brown argued that there was not probable cause to arrest "at the time of [Brown's] transport" to the sheriff's office.  Because the State had previously conceded that Brown was arrested when he was transported to the sheriff's office for field sobriety testing, the issue for the hearing was whether there was probable cause to arrest at that point.  After testimony from the arresting officer, and having viewed the dashboard camera video, the court denied Brown's motion based on its determination that, by the time Brown was transported to the sheriff's office for

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version.

field sobriety testing, there was probable cause to arrest Brown for either OWI or obstructing an officer.

¶9 Brown pleaded no contest to OWI, as a ninth offense, and a judgment of conviction was entered. He now appeals. Additional facts are provided as necessary in the discussion that follows.

## DISCUSSION

¶10 Although the suppression hearing focused on whether there was probable cause to arrest Brown at the time he was transported to the sheriff's office for field sobriety tests, Brown does not return to that issue on appeal. Instead, he argues that he was arrested when he was handcuffed and that the arrest was unlawful because it was not supported by probable cause.[3] The State counters that Klump's use of handcuffs did not transform the investigatory stop into an arrest.[4] For the reasons that follow, we agree with the State.

---

[3] Although Brown appears to suggest at times that Klump lacked reasonable suspicion to justify an investigatory stop, he does not develop this argument, and we need not address undeveloped arguments. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768. Moreover, any such argument would fail on the merits. Klump encountered Brown walking along a rural county highway in the dark near where a motor vehicle crash was reported; Brown began to make a statement linking himself with the reported crash before stopping himself short; and Klump observed Brown throw what Klump either saw or reasonably inferred were cans of beer into the ditch. Given these facts, we conclude that there was reasonable suspicion to justify an investigative stop. *See Terry v. Ohio*, 392 U.S. 1 (1968).

[4] The State also argues that Brown forfeited this argument on appeal by not raising it before the circuit court. However, because we conclude that Brown was not arrested when he was handcuffed and resolve this appeal on that basis, we do not address the State's argument regarding forfeiture. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Separately, we observe that the State improperly cites as authority an unpublished per curiam opinion, which is also included in the appendix to the State's brief. We remind counsel

(continued)

¶11    "When we review a decision on a motion to suppress evidence, we uphold a circuit court's findings of historical fact unless they are clearly erroneous.  However, we review the application of constitutional principles to those facts independently, as questions of law."  *State v. Blatterman*, 2015 WI 46, ¶16, 362 Wis. 2d 138, 864 N.W.2d 26 (citation omitted).

¶12    There are two different types of seizures under the Fourth Amendment of the U.S. Constitution and Article I, Section 11 of Wisconsin's constitution:  investigatory stops, or *Terry* stops, and arrests.  *State v. Young*, 2006 WI 98, ¶¶18, 20, 22, 294 Wis. 2d 1, 717 N.W.2d 729; *see also Terry v. Ohio*, 392 U.S. 1 (1968).

¶13    "Pursuant to *Terry v. Ohio*, … a police officer may, under certain circumstances, temporarily detain a person for purposes of investigating possible criminal behavior even though there is not probable cause to make an arrest."  *Blatterman*, 362 Wis. 2d 138, ¶18.  The *Terry* standard is codified in WIS. STAT. § 968.24, which states, "a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime."  *See also Blatterman*, 362 Wis. 2d 138, ¶18 ("When we interpret § 968.24, we rely on *Terry* and the cases following it."); *Young*, 294 Wis. 2d 1, ¶30 ("Typically, this court interprets Article I, Section 11 of the Wisconsin Constitution in tandem with the Fourth Amendment jurisprudence of the United States Supreme Court.").

---

that it is improper to cite per curiam opinions in briefs to this court.  *See* WIS. STAT. § 809.23(3)(a) and (b) (providing that a per curiam opinion "may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case").

¶14     To pass constitutional muster, there must be "reasonable suspicion" to justify an investigatory stop.  *Young*, 294 Wis. 2d 1, ¶20.   "Reasonable suspicion requires that a police officer possess specific and articulable facts that warrant a reasonable belief that criminal activity is afoot."  *Id.*, ¶21; *see also id.*, ¶59 ("[T]he suspicion necessary to justify an investigatory stop is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  An investigatory stop "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'"  *Blatterman*, 362 Wis. 2d 138, ¶20 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  "In the name of investigating a person who is no more than suspected of criminal activity, the police may not … seek to verify their suspicions by means that approach the conditions of arrest."  *Royer*, 460 U.S. at 499.  Police may, during an investigatory stop, "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop."  *United States v. Hensley*, 469 U.S. 221, 235 (1985).

¶15     In contrast to an investigatory stop, an arrest "is a more permanent detention that typically leads to 'a trip to the station house and prosecution for crime,'" and must be justified by probable cause.  *Young*, 294 Wis. 2d 1, ¶22 (quoting *Terry*, 392 U.S. at 16).  "Probable cause requires that an arresting officer have sufficient knowledge at the time of the arrest to 'lead a reasonable police officer to believe that the defendant probably committed or was committing a crime.'"  *Id.* (quoting *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999)).

¶16     The test for whether a person has been arrested is whether a reasonable person in the defendant's position, given the degree of restraint, would consider himself or herself to be in custody.  *Blatterman*, 362 Wis. 2d 138, ¶30;

7

*see also State v. Vorburger*, 2002 WI 105, ¶68, 255 Wis. 2d 537, 648 N.W.2d 829 ("[W]e use an objective test, assessing the totality of the circumstances, to determine whether a seizure has escalated into an arrest …."). Depending on the circumstances, an officer may physically restrain an individual without necessarily transforming an investigatory stop into an arrest. *See State v. Goyer*, 157 Wis. 2d 532, 538, 460 N.W.2d 424 (Ct. App. 1990); *State v. Wortman*, 2017 WI App 61, ¶¶5, 7, 10, 378 Wis. 2d 105, 902 N.W.2d 561 (concluding that officer's activation of squad lights, blocking of defendant's path by squad car, requesting that defendant ride in back of squad car to scene, and taking of defendant's driver's license did not constitute arrest). More specifically, the use of handcuffs "'does not necessarily render a temporary detention unreasonable [or transform a] detention into an arrest.'" *Blatterman*, 362 Wis. 2d 138, ¶31 (alterations in original) (quoting *State v. Pickens*, 2010 WI App 5, ¶32, 323 Wis. 2d 226, 779 N.W.2d 1). "However, for such measures to be reasonable, they must be justified by particular circumstances, such as the risk of harm to the officers." *Id.*; *see also Vorburger*, 255 Wis. 2d 537, ¶38 ("Reasonableness is the 'ultimate standard' embodied in the Fourth Amendment.").

¶17 We conclude that, under the circumstances here, it was reasonable for Klump to handcuff Brown during the investigatory stop based on concerns for Klump's safety and based on Klump's need to maintain the status quo, and that handcuffing Brown did not transform the stop into an arrest.

¶18 First, it was reasonable for Klump to handcuff Brown based on concerns for Klump's safety. As stated, Klump encountered Brown walking along a rural county highway, it was dark out, and Klump was the only officer present. Additionally, Brown was wearing bulky hunting clothing, which could readily be used to hide a weapon. And Brown was, in Klump's words, "acting pretty

skittish." This included Brown throwing cans of beer into the ditch when Brown was in Klump's plain sight and as Brown was speaking with and walking toward Klump. After throwing the cans, Brown then put his hands back into his pockets. *See* **State v. Kyles**, 2004 WI 15, ¶41, 269 Wis. 2d 1, 675 N.W.2d 449 ("Officers have a legitimate, objective concern for their own safety when an individual reaches into his pockets."). In addition, when Klump directed Brown to put his hands on the squad car before Klump handcuffed him, Brown did not initially comply with Klump's instructions; he did so only after Klump repeated his instructions.

¶19 Second, it was reasonable for Klump to handcuff Brown in order to maintain the status quo—specifically, to prevent Brown from concealing evidence or otherwise frustrating Klump's investigation. Again, as stated, Klump handcuffed Brown after Klump saw Brown throw cans of beer into the ditch near the site of a reported crash. At the time Klump ordered Brown to place his hands on the front of the squad car, Klump had already either seen or reasonably inferred that the cans were cans of beer, and prior to Klump removing the handcuffs from his belt to place on Brown, Brown confirmed they were cans of beer and that he threw them because he did not want Klump to find them on him. Because Klump was responding to a report of a nearby motor vehicle crash, and because Brown had earlier began to make a statement linking himself to a motor vehicle crash before cutting himself short, it was reasonable to believe that by removing the cans of beer from his pockets and throwing them into the ditch, Brown was attempting to conceal or dispose of evidence linking himself or others to a crime. Additionally, because Brown was wearing bulky clothing and put his hands back in his pockets after he threw the last two cans of beer into the ditch, it was also

reasonable to believe that he might attempt to conceal or dispose of additional evidence.[5]

¶20    In light of these facts, we conclude that Klump's use of handcuffs was "justified by particular circumstances." ***Blatterman***, 362 Wis. 2d 138, ¶31. Specifically, handcuffing Brown was reasonably necessary based on officer safety concerns and to maintain the status quo by ensuring that Brown did not attempt to conceal additional evidence or otherwise frustrate Klump's investigation. *See **id.***

¶21    We further conclude that a reasonable person in Brown's position would not have considered himself to be in custody.  Brown was aware that Klump had witnessed him throw the cans of beer into the ditch, Klump handcuffed Brown right after Brown threw the last two cans into the ditch, and Klump specifically explained to Brown, after handcuffing him, that Brown was not under arrest but that he was "being detained" "because [he was] throwing stuff in the ditch" and "acting pretty skittish."  A reasonable person in Brown's position would have understood that he was being handcuffed not because he was under arrest, but for the reasons the officer stated.  *See **id.***, ¶30 (stating that the circumstances to consider when determining whether an individual is under arrest include "'what has been communicated by the police officers, either by their words or actions'" (quoted source omitted)).  Indeed, when Klump explained to

---

[5] At some point Klump noticed an odor of intoxicants coming from Brown, which would be an additional circumstance justifying the use of handcuffs based on safety concerns and a need to maintain the status quo.  However, in the dashboard camera video, Klump tells Brown that he can smell alcohol on him only after Klump has finished handcuffing Brown and prior to Brown entering the squad car.  And at the evidentiary hearing on Brown's first motion to suppress, Klump testified that Brown had a "strong" odor of intoxicants, which Klump noticed before Brown was taken to perform filed sobriety tests, but Klump did not otherwise testify as to how early he noticed the odor.  Therefore, the record is unclear as to whether Klump noticed the odor of intoxicants coming from Brown prior to handcuffing him.

Brown that he was not being arrested and why he was being detained, Brown responded, "Ok," signaling that he understood. Because handcuffing Brown was reasonable under the circumstances, and because a reasonable person in Brown's position would not consider himself to be in custody at that point, these measures did not transform the investigatory stop into an arrest.

¶22 The State cites **Blatterman** and several cases from other jurisdictions in support of its argument that handcuffing Brown did not transform the stop into an arrest. In response, Brown argues that those cases are distinguishable because they "all had extenuating circumstances involving dangerousness that required law enforcement to act with restrictive measures quickly." We reject Brown's argument that these cases are distinguishable on this basis. As we have already explained, here the use of handcuffs was similarly justified by concerns of officer safety and to preserve the status quo. Moreover, to the extent that Brown intends to argue that concern for officer safety is the only factor that can justify the use of restrictive measures such as handcuffs during an investigatory stop, we reject that argument as well. Police are entitled, during an investigatory stop, to "take such steps as [are] reasonably necessary to protect their personal safety *and to maintain the status quo during the course of the stop.*" **Hensley**, 469 U.S. at 235 (emphasis added). Consistent with this, our supreme court has stated that the use of handcuffs during an investigatory stop "must be justified by particular circumstances, *such as* the risk of harm to the officers." **Blatterman**, 362 Wis. 2d 138, ¶31 (emphasis added). This shows that officer safety is but one justification for the use of restrictive measures like the use of handcuffs. Here, we conclude

that handcuffing Brown was justified based on concerns of officer safety and based on a need to preserve the status quo.[6]

## CONCLUSION

¶23 For the reasons stated above, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] In Brown's reply brief, he states, "Mr. Brown argues that he was illegally arrested at the point when Klump handcuffed him *and also when Klump locked Mr. Brown away in the squad car.*" (Emphasis added.) We need not address this assertion for multiple reasons. First, we need not address this assertion because Brown does not develop an argument beyond making this assertion. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."). Second, we need not address this assertion because Brown makes it for the first time in his reply brief. *See State v. Mata*, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999) ("We do not address issues raised for the first time in a reply brief."). Further, even if we assume without deciding that Brown was arrested when he was first placed in the squad car, we would affirm on the alternative ground that, by that point, there was probable cause to arrest Brown for obstruction. *See* WIS. STAT. § 946.41(2)(a) ("obstruct" includes "knowingly giving false information to the officer … with intent to mislead the officer in the performance of his or her duty"). At that point, in addition to the facts discussed above, Brown had given Klump conflicting versions of events regarding: what he had been doing that night (telling Klump that he was just walking down the road, that he had been looking at property, and that he had been bowhunting), and how much he had drank that night (initially telling Klump that he had consumed nothing and later saying that he had one drink). Brown also told Klump that his mother had been driving the vehicle, but Klump found car keys in Brown's pocket during a search of Brown's person.

12