STATE of Wisconsin, Plaintiff-Respondent,

v.

Theodore A. QUARTANA, Defendant-Appellant.†

Court of Appeals

*No. 97–0695. Submitted on briefs June 17, 1997.—Decided September 24, 1997.*

(Also reported in 570 N.W.2d 618.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Donald L. Conner II* of *Kingstad Law Offices, S.C.* of Franklin.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michele W. Hulgaard* of Waukesha.

On behalf of the Wisconsin Department of Justice, there was a brief filed by *James E. Doyle,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. Section 968.24, STATS., our codification of the *Terry*[1] stop, allows the detention and temporary questioning of a suspect without arrest for investigative purposes. The last sentence of the statute says: "Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped." In this case involving an investigation of a one-car accident, Theodore A. Quartana was initially questioned at his home and was then transported by police to the accident scene. Quartana argues that this police action violates § 968.24. Therefore, his refusal to take a chemical test following an arrest for operating a motor vehicle while intoxicated cannot be held to be improper. By this opinion, we determine the analysis to be conducted when a person under a *Terry* investigation is removed from one place to another and ultimately affirm the trial court's determination that Quartana improperly refused to take the test.

Sometime after 2:00 a.m. on January 7, 1996, Quartana lost control of his car and drove into a ditch. Immediately afterwards, Quartana left the accident

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

scene and walked home to his parents' house, approximately one mile away.

A Wisconsin State Patrol trooper arrived first on the scene of the accident and took control as the investigating officer. After determining that Quartana owned the car and lived nearby, a city of Brookfield Police officer was dispatched to Quartana's residence.

The officer found Quartana at home and asked to see his driver's license and asked him about the accident. Quartana admitted he had been driving at the time of the accident. At this point, the officer observed that Quartana's eyes were "sort of" bloodshot and glassy and that his breath smelled of intoxicants. When the officer informed Quartana that he would have to return to the accident scene to talk with the trooper investigating the accident, Quartana asked if he could ride with his parents. The officer testified that he told Quartana "he would have to come with [him], because [he] needed to keep an observation on him, and that he was temporarily being detained in reference to the accident investigation." The officer kept Quartana's driver's license and drove him in the rear of the squad car to the accident scene.

At the accident scene, the officer turned Quartana and his driver's license over to the trooper. The trooper immediately interviewed Quartana and then had him perform several field sobriety tests. Quartana failed all of the tests and afterwards refused to take a preliminary breathalyzer test. The trooper then placed him under arrest and took him to the police station for further testing. At the station, the trooper read Quartana the Informing the Accused form, but Quartana refused to submit to any chemical testing.

At the refusal hearing, Quartana challenged the refusal by arguing that he had been placed under

arrest without probable cause when the officer kept his driver's license and transported him against his will from his residence to the accident scene. Therefore, the request to submit to chemical testing came after he had been arrested without probable cause in violation of his Fourth Amendment rights. The trial court found that although the officer did not have probable cause to arrest Quartana, he acted within the scope of a temporary investigative detention when he transported Quartana to the accident scene. Quartana appeals.

Because we assume without deciding that there was no probable cause to arrest, the officer's temporary investigative stop of Quartana was a "seizure" subject to Fourth Amendment protection. It is the State which bears the burden of proving that a warrantless search or seizure was reasonable and in conformity with the Fourth Amendment. *See State v. Washington,* 134 Wis. 2d 108, 120, 396 N.W.2d 156, 161 (1986). Whether the facts as found by the trial court satisfy the constitutional requirement of reasonableness is a question of law we review independently of the trial court. *See State v. Waldner,* 206 Wis. 2d 51, 54, 556 N.W.2d 681, 683 (1996).

Pursuant to *Terry v. Ohio,* 392 U.S. 1, 22 (1968), a police officer may, in the appropriate circumstances, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. Our legislature codified the constitutional standard established in *Terry* in § 968.24, STATS., cited below.[2] When interpreting the

---

[2] **968.24 Temporary questioning without arrest.** After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects

scope of § 968.24, we must resort to *Terry* and its progeny. *See State v. Jackson,* 147 Wis. 2d 824, 830–31, 434 N.W.2d 386, 389 (1989).

During the course of a *Terry* stop, officers may try to obtain information confirming or dispelling their suspicions. *See Berkemer v. McCarty,* 468 U.S. 420, 439 (1984). By its express language, § 968.24, STATS., authorizes the police to move a suspect short distances during the course of a temporary investigation. The statute states that the police may temporarily detain and question an individual "in the vicinity where the person was stopped." *See id.* Therefore, it is clear that the law permits the police, if they have reasonable grounds for doing so, to move a suspect in the general vicinity of the stop without converting what would otherwise be a temporary seizure into an arrest. *See State v. Isham,* 70 Wis. 2d 718, 728, 235 N.W.2d 506, 511–12 (1975); 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 9.2(g) at 75–76 (3d ed. 1996). Thus, when a person under investigation pursuant to a *Terry* stop is moved from one location to another, there exists a two-part inquiry. First, was the person moved within the "vicinity?" Second, was the purpose in moving the person within the vicinity reasonable?

"Vicinity" is commonly understood to mean "a surrounding area or district" or "locality." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY: UNABRIDGED 2550 (1976). We may use recognized dictionary definitions to ascertain the meaning of ordinary,

that such person is committing, is about to commit, or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

nontechnical words in a statute. *See State v. Lopez,* 207 Wis. 2d 415, 434, 559 N.W.2d 264, 271 (Ct. App. 1996). We are satisfied that the legislature's use of the term "vicinity" comports with the dictionary definition. We are further convinced that the accident scene, only one mile from Quartana's house, was in the "surrounding area" or "locality." As evidenced by Quartana's own actions, it was within walking distance even in the winter. Therefore, Quartana was moved within the vicinity. The question remains whether the police had reasonable grounds for moving the suspect within the vicinity.

In *United States v. Vanichromanee,* 742 F.2d 340, 343 (7th Cir. 1984), federal agents detained a suspect in her apartment after suspecting that drugs were being sold from the apartment. At the same time, other agents detained three defendants who they suspected were colleagues of the suspect in a parking garage below the apartment. *See id.* The agents did not arrest any of the defendants. *See id.* at 344. The agents then transported the three men from the parking garage to the apartment in order to ascertain their relationship to the apartment and the suspect and to continue the investigation. *See id.* The court held that moving the three defendants did not "vitiate the investigatory nature of the stop" and allowed the police to identify the defendants and clarify their connection with the suspect in the apartment. *Id.* at 345. This decision comports with other cases where courts have upheld a temporary detention and transportation of a suspect when the police had reasonable grounds for doing so.[3]

---

[3] For example, courts have held that the police may move a suspect for reasons of security and safety, *see Florida v. Royer,* 460 U.S. 491, 504–05 (1983); for comfort or convenience, *see United States v. Richards,* 500 F.2d 1025, 1028–29 (9th Cir.

■

However, detentions may be reasonable for investigative purposes, yet violative of the Fourth Amendment. *See Florida v. Royer,* 460 U.S. 491, 499 (1983). As courts, we must guard against police misconduct through overbearing or harassing techniques that tread upon people's personal security without the objective evidentiary justification the Constitution requires. *See Terry,* 392 U.S. at 15. "The police [may not] seek to verify their suspicions by means that approach the conditions of arrest." *Royer,* 460 U.S. at 499. Moreover, the detention must at all times be temporary and last no longer than necessary to effectuate the purpose of the stop. *See id.* at 500. In assessing the permissible length of a stop, we must determine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the person. *See United States v. Sharpe,* 470 U.S. 675, 686 (1985).

■

We conclude that it was reasonable for the police to detain and transport Quartana to the scene of the accident in order to continue their investigation. Quartana had bloodshot, glassy eyes, smelled of intoxicants and had admitted to driving at the time of the accident. Therefore, the officer had reasonable grounds to investigate further in order to determine if Quartana's intoxication contributed to the accident.

---

1974) (lawful to move detainees from airport runway to terminal); or to continue an investigation, *see State v. Flynn,* 190 Wis. 2d 31, 42, 527 N.W.2d 343, 347 (Ct. App. 1994), *cert. denied,* 514 U.S. 1030 (1995) (lawful to move detainees from inside house to outside in order to further investigative effort).

Further, the officer went to Quartana's residence only to assist the state trooper in locating Quartana after he left the scene of the accident. The officer was not at Quartana's residence to investigate the cause of the accident or interview Quartana. The state trooper, not the police officer, was in charge of the accident scene and the investigation. It was the trooper's responsibility to interview Quartana and complete the investigation. But the trooper was at the scene of the accident, and it would be unreasonable to expect the trooper to leave the scene unattended or require the assistance of yet another trooper to preserve the scene while she was away. Therefore, it was far more reasonable for the officer to transport Quartana the short distance to the accident scene in order to continue the investigative effort. Given the fact that the trooper was in charge of the investigation, transporting Quartana to the accident scene was the quickest way for the police to confirm or dispel their suspicions.

Quartana argues that the conditions of his transportation amounted to an arrest. Quartana argues that the restraint of his liberty proves he was under arrest. He is wrong. A restraint of liberty does not ipso facto prove that an arrest has taken place. *See, e.g., State v. Goebel*, 103 Wis. 2d 203, 213–14, 307 N.W.2d 915, 920 (1981) (brief and involuntary detention is involved with any investigatory stop). Nor do we believe the fact that the officer kept Quartana's driver's license leads to a conclusion that an arrest has taken place. Instead, we must determine, given the totality of the circumstances, whether a reasonable person in the suspect's position would not have considered himself or herself to be in custody given the degree of restraint under the

449

circumstances. *See State v. Swanson,* 164 Wis. 2d 437, 446–47, 475 N.W.2d 148, 152 (1991).

We conclude that a reasonable person in Quartana's position would not have believed he or she was under arrest. Quartana was not transported to a more institutional setting, such as a police station or interrogation room. *Cf. Royer,* 460 U.S. at 502–03 (arrest where defendant taken to a small room out of public view in airport terminal and interrogated); *Hayes v. Florida,* 470 U.S. 811, 815 (1985) (arrest where defendant taken to police station); *Dunway v. New York,* 442 U.S. 200, 207 (1979) (arrest where defendant taken to police station and placed in interrogation room). Instead, Quartana was transported back to the scene of the accident that he had earlier left and his detention was "brief in duration and public in nature." *See Swanson,* 164 Wis. 2d at 447, 475 N.W.2d at 152. Also, the police did not detain Quartana for an unusually long period of time. The police diligently pursued their investigation and Quartana's detention lasted no longer than necessary to confirm their suspicions. The officer transported Quartana directly to the accident scene, and the trooper interviewed Quartana and conducted a field sobriety test as soon as Quartana arrived.

Moreover, Quartana had to be aware that the detention was only temporary and limited in scope. The officer told him that he was being temporarily detained for purposes of the investigation and that he was being transported to the accident scene, not a police station, to talk with the state trooper investigating the accident. At no time prior to taking the field sobriety test did any police officer communicate to Quartana, through either words or actions, that he was under

450

arrest, or that the restraint of his liberty would be accompanied by some future interference with his freedom of movement. *See generally Terry,* 392 U.S. at 26 (arrest occurs when there is a restraint of liberty accompanied by future interference with the individual's freedom). Quartana had to realize that if he passed the field sobriety test, any restraint of his liberty would be lifted and he would be free to go. Therefore, we affirm the trial court's finding that the police did not exceed the scope of a *Terry* stop.[4]

*By the Court.*—Order affirmed.

---

[4] We observe that the statute requires the stop of the person to be in a public place. An argument could be made that Quartana was first confronted and detained at his private residence and not a public place. This issue, however, was neither raised nor briefed. Further, we are unable to find any Wisconsin case discussing the applicability of § 968.24, STATS., when the detainee is in a private residence. The issue is reserved for some future case.