# COURT OF APPEALS
# DECISION
# DATED AND FILED

## February 3, 2021

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2171-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF651

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

PAUL R. RUPPLE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: MARIA S. LAZAR, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Paul R. Rupple appeals from a judgment of conviction, entered on his no-contest plea, for one count of operating a motor vehicle while intoxicated (seventh offense), contrary to WIS. STAT. § 346.63(1)(a) (2017-18).[1]  At issue on appeal is whether the circuit court should have granted his suppression motion on two bases.  We affirm.

## BACKGROUND

¶2     According to the criminal complaint, police officers were dispatched to an apartment building to investigate a report that a man driving a vehicle hit another vehicle and was later seen crawling in the driveway.  Officers spoke with a witness who showed them a cell phone video of Rupple operating a vehicle and then stumbling and falling in the driveway.  The witness, who knew Rupple was a resident in the apartment building, said Rupple was bleeding from his face.

¶3     Officers went to Rupple's apartment and were eventually let in by a woman named Joan Bosserman, who later identified herself as Rupple's girlfriend.  They found Rupple sitting on his couch, bleeding from his nose and ear.  The officers spoke with Rupple while his injuries were evaluated by paramedics who had also been dispatched to the residence.  The officers observed that Rupple appeared to be intoxicated and, after Rupple declined additional medical attention, the officers asked Rupple to go with them to the nearby hospital to perform field sobriety tests.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

¶4      At the hospital, Rupple kept losing his balance and sat on the police squad car's front push bar. Rupple refused to perform field sobriety tests or submit to a preliminary breath test and was placed under arrest for operating while intoxicated. Rupple agreed to a chemical test of his blood, which later revealed his blood alcohol content to be .331 percent.

¶5      Rupple was charged with operating while intoxicated (seventh offense) and one count of driving with a prohibited alcohol concentration. He moved to suppress "[a]ll evidence derived from the illegal entry" of his apartment, asserting that "Bosserman did not voluntarily give consent" for the officers to enter the apartment and that Bosserman lacked both apparent and actual authority to give the officers permission to enter. Rupple also asserted that he was illegally arrested at the time he was transported to the hospital, pointing to the fact that he was handcuffed and searched before he was transported. He argued that at the time, the officers lacked probable cause to arrest him. Finally, Rupple argued that even if he was not under arrest, he still should have been given ***Miranda***[2] warnings before being questioned.

¶6      At an evidentiary hearing on the motion, the circuit court heard testimony from the two officers who arrested Rupple. The State was not able to locate Bosserman, so she was not called as a witness. The State also introduced several recordings made by the citizen witness and the officers.

¶7      The circuit court denied Rupple's suppression motion. It found that Bosserman—who answered the door wearing pajamas and a robe and said she had

---

[2] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).*

been sleeping—gave the officers permission to enter. The circuit court found that Bosserman had both actual and apparent authority to give the officers permission to enter the apartment. The circuit court further found that the "community caretaker" exception to the warrant requirement provided another legal basis for the officers to enter the apartment. *See* ***State v. Pinkard***, 2010 WI 81, ¶14, 327 Wis. 2d 346, 785 N.W.2d 592 ("[A] police officer serving as a community caretaker to protect persons and property may be constitutionally permitted to perform warrantless searches and seizures.").

¶8 The circuit court found that the officers had a valid basis to transport Rupple two blocks to conduct field sobriety tests at the hospital and that Rupple was not under arrest at the time he was transported. The circuit court also found that Rupple's ***Miranda*** rights had not been violated.

¶9 Rupple subsequently entered a plea agreement with the State to which he pled no contest to operating while intoxicated, and the State dismissed the prohibited alcohol concentration charge. The circuit court found Rupple guilty and sentenced him to four years of initial confinement and four years of extended supervision, and it found him eligible for the substance abuse early release program. This appeal follows.

## STANDARD OF REVIEW

¶10 The State "bears the burden of proving that a warrantless search or seizure was reasonable and in conformity with the Fourth Amendment." ***State v. Quartana***, 213 Wis. 2d 440, 445, 570 N.W.2d 618 (Ct. App. 1997). When a defendant appeals the denial of a motion to suppress, we defer to the circuit court's findings of evidentiary and historical fact unless they are clearly erroneous,

but we independently apply those facts to the law. *See **State v. Sobczak***, 2013 WI 52, ¶9, 347 Wis. 2d 724, 833 N.W.2d 59.

## DISCUSSION

¶11 On appeal, Rupple has pursued two primary arguments advanced in his suppression motion.[3] First, he argues that Bosserman lacked actual or apparent authority to consent to officers entering the apartment. Second, Bosserman argues that he was under arrest when he was transported to the hospital and that officers lacked probable cause to arrest him at the time he was being transported. We consider each issue in turn.

### I. Entry to the apartment.

¶12 We begin with the officers' warrantless entry into Rupple's apartment. Warrantless searches are impermissible under the Fourth Amendment "subject to only a few limited exceptions," including "valid third-party consent." ***State v. Kieffer***, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998). "For such consent to be valid, the third party must 'possess[ ] common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" ***State v. Torres***, 2018 WI App 23, ¶17, 381 Wis. 2d 268, 911 N.W.2d 388 (citation omitted; alteration in original). Stated differently, police may legally enter if "the officer was invited to cross the threshold by someone authorized by the defendant to extend such invitations." *See **Sobczak***, 347 Wis. 2d 724, ¶1. The third party can be someone who lives in the home or even a weekend guest. *See **id.***, ¶¶13-18.

---

[3] Arguments that Rupple has chosen not to pursue are deemed abandoned and will not be discussed. *See **Reiman Assocs., Inc. v. R/A Advert., Inc.***, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (holding that issues not briefed are deemed abandoned).

The third party's authority to consent "may be either actual or apparent, as long as, in the case of apparent authority, reliance on the authority is reasonable." *Torres*, 381 Wis. 2d 268, ¶19. "Whether a person has authority to consent is dependent on the totality of the circumstances, and the State has the burden of proving valid third-party consent by clear and convincing evidence." *Id.*

¶13    Here, the circuit court found that Bosserman had both actual and apparent authority to give the officers permission to enter the apartment. Because we agree that there was apparent authority, we decline to address whether there was also actual authority. *See State v. Tomlinson*, 2002 WI 91, ¶26, 254 Wis. 2d 502, 648 N.W.2d 367 (declining to address arguments concerning actual authority where court concluded that person who answered the door had apparent authority to allow the officers to enter the home).

¶14    When the State seeks to justify a warrantless search based on apparent authority, "[t]he question for the courts is whether the information available to the police officers at the time of the search would justify a reasonable belief that the party consenting to the search had the authority to do so." *Kieffer*, 217 Wis. 2d at 548. Courts evaluate the reasonableness of the officers' belief using the objective standard. *See id.*

¶15    Here, the circuit court found that officers knocked on the door repeatedly and that the door was eventually opened by Bosserman, who was

wearing "pajamas and a robe" and said she had been sleeping.[4]  These facts suggested that Bosserman had "common authority over or other sufficient relationship to the premises" to allow the officers into the apartment.  *See Torres*, 381 Wis. 2d 268, ¶17 (citation omitted).  The circuit court further found that after the officers entered and found Rupple on the couch in the living room, Rupple did not ask them to leave or "say that Ms. Bosserman doesn't live there."  Our supreme court has recognized that a defendant's lack of objection when a third party allows officers to enter the home is a factor when considering whether the third party had apparent authority to allow the officers to enter.  *See Tomlinson*, 254 Wis. 2d 502, ¶34.

¶16     We conclude that under these circumstances, the officers could have reasonably believed that Bosserman had authority to admit them to the apartment.  Rupple disagrees.  He argues that the fact Bosserman was wearing pajamas does not demonstrate that Bosserman lived in the apartment, noting that "[p]eople often do errands in pajama pants because they are comfortable."  We are not persuaded by Rupple's argument.  The totality of the circumstances supported the officers' reasonable belief that Bosserman was not someone who just stopped by while running errands and instead was someone who lived in the apartment or was at least a guest who had authority to let the officers into the apartment.  For the foregoing reasons, we agree with the circuit court that the officers legally entered

---

[4] In his reply brief, Rupple asserts that "[i]t is unclear from the testimony whether [Bosserman] told [the officers] that she had just woken up before or after she let them in the apartment."  The trial court found that Bosserman told the officers she had been sleeping and then let them into the apartment.  Rupple's opening brief did not ask this court to conclude that the circuit court's finding was clearly erroneous, and we decline to address an issue raised for the first time in a reply brief.  *See Richman v. Security Sav. & Loan Ass'n*, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973) (holding that the court will not consider arguments raised for the first time in a reply brief).

the apartment because they obtained permission to enter from someone with apparent authority to give consent. *See **Torres***, 381 Wis. 2d 268, ¶17.

¶17     We also agree with the State that there is another independent basis to affirm the circuit court's denial of the suppression motion:  Rupple did not challenge the circuit court's conclusion that the community caretaker exception to the warrant requirement provided another basis for the officers to enter the apartment. *See **State v. Schulpius***, 2006 WI 1, ¶26, 287 Wis. 2d 44, 707 N.W.2d 495 (holding that failing to challenge an issue in the court of appeals amounts to a waiver of that issue).

¶18     In his reply brief, Rupple does not deny that he failed to raise this issue in his opening appellate brief.  Instead, he belatedly argues that the officers did not rely on the community caretaker exception to enter the apartment and that "[t]here is no testimony that supports it."  We conclude that by failing to challenge the circuit court's conclusion that the community caretaker exception applies in his opening brief, Rupple forfeited his challenge to the application of the community caretaker exception. *See **id.***; *see also **Richman v. Security Sav. & Loan Ass'n***, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973) (holding that the court will not consider arguments raised for the first time in a reply brief).  Moreover, even if this court were inclined to consider Rupple's late argument, we would not overturn the circuit court's ruling in light of our conclusion concerning Bosserman's apparent authority.  In any case, Rupple's one-paragraph reply does not adequately explain why the circuit court's conclusion on the community caretaker issue was wrong.

## II. Whether Rupple was under arrest when he was transported.

¶19    Rupple asserts that when the officers transported him two blocks to a nearby hospital so they could conduct field sobriety tests, his detention became an arrest without probable cause.  He argues:  "There was no reasonable reason to move Rupple to the hospital to conduct the field sobriety tests."

¶20    The circuit court concluded that Rupple was not under arrest when he was handcuffed and transported two blocks to the hospital.  The circuit court applied the two-part test outlined in *Quartana*, a case that recognized a suspect can be moved within the vicinity without converting an investigatory detention into an arrest.  *See Quartana*, 213 Wis. 2d at 446.  That two-part test asks whether the person was "moved within the 'vicinity'" and whether "the purpose in moving the person within the vicinity [was] reasonable."  *See id.  Quartana* concluded that an area within one mile was in the vicinity.  *See id.* at 447.

¶21    Rupple does not appear to dispute the circuit court's conclusion that the hospital was within the vicinity of his apartment.  Instead, he asserts that it was unreasonable for officers to transport Rupple to the hospital to perform field sobriety tests instead of conducting them in Rupple's apartment or in the driveway of his apartment building.  The circuit court relied on several facts to conclude that the decision to transport Rupple was reasonable, including:  "Rupple was swaying on his feet; had already fallen twice in the parking lot; the lot was on a slight angle; there was still a group of people around, including Ms. Bosserman; and the hallway was a legitimate security concern."

¶22    Rupple does not specifically challenge the circuit court's findings, but he points out that it was only slightly raining outside and that the officer gave conflicting testimony on whether it would have been unsafe to conduct the field

sobriety tests in the apartment hallway. Like the circuit court, we conclude that the officers' purpose in moving Rupple within the vicinity to conduct the field sobriety tests was reasonable. *See id.* at 446. Rupple was injured, had difficulty standing, and had already fallen in the angled parking lot. Further, there was limited space to conduct field sobriety tests indoors.

¶23 In addition to arguing that the decision to transport him to the hospital was unreasonable, Rupple asserts: "A reasonable person in Rupple's situation would have believed that he was under arrest." However, Rupple does not develop this argument. For instance, he does not address the circuit court's findings that the officers told Rupple he was not under arrest before he was transported and removed the handcuffs when they arrived at the hospital. We decline to develop an argument for him, and we reject his assertion without further discussion. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (holding that the court will not abandon its neutrality to develop an argument for a litigant); ***Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't***, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593 (Ct. App. 1985) (holding that the court will not decide inadequately briefed arguments).

¶24 Finally, because we have concluded that Rupple was not under arrest when he was transported to the hospital, we need not address Rupple's argument that there was no probable cause to arrest him at that time. *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (holding that "cases should be decided on the narrowest possible ground").

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.