# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1351-CR**

Cir. Ct. No. **2020CT71**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ADEKOLA JOHN ADEKALE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for La Crosse County: TODD W. BJERKE, Judge. *Affirmed.*

¶1 KLOPPENBURG, J.[1] Adekola John Adekale appeals the judgment of conviction, entered upon his guilty plea, of operating a motor vehicle while

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

under the influence as a second offense. Adekale argues that the circuit court erred in denying his motion to suppress evidence obtained after a state trooper initiated a traffic stop in a motel parking lot. Specifically, Adekale argues that the state trooper unlawfully arrested him when, during the stop, the trooper unreasonably transported Adekale to another part of the motel parking lot to conduct field sobriety tests. I reject Adekale's argument that he was unreasonably transported because he was transported within the vicinity of the stop and the purpose for transporting him was reasonable. Accordingly, I affirm.

## BACKGROUND

¶2  The State charged Adekale with operating a motor vehicle while under the influence and operating a motor vehicle with a prohibited alcohol concentration, both as second offenses, following a traffic stop in February 2020. Adekale filed a motion to suppress evidence obtained after he was transported from the location of the traffic stop to another location for field sobriety tests.

¶3  The circuit court held an evidentiary hearing on Adekale's suppression motion at which the state trooper who initiated the stop and transported Adekale to the other location testified. During the trooper's testimony, portions of the trooper's squad car camera video of the stop were played. Portions of the body camera video from another officer who arrived as backup were also played, without any accompanying testimony. The following facts are taken from the state trooper's testimony, which the circuit court credited.

¶4  At approximately 2:50 a.m. on February 16, 2020, in the City of La Crosse, Trooper Cody Digre of the Wisconsin State Patrol observed a vehicle traveling above the speed limit and with a defective taillight. After Digre

2

activated his lights and siren, the car stopped in a parking lot on the south side of a Motel 6. Digre approached the vehicle after calling for backup.

¶5     There were seven people in the vehicle:  six passengers and the driver, later identified as Adekale.  While Digre was asking Adekale a series of questions, passengers "kept chiming in" and asking questions about the stop. Some of the passengers were yelling and at one point one of the passengers honked the vehicle's horn.  Digre smelled an odor of intoxicants and observed that Adekale's eyes were glossy and his speech was slurred.  Adekale "admitted to drinking."

¶6     When the backup officer arrived, Digre asked the passengers to leave and the passengers walked toward the front or side entrances of the motel. Digre could not see whether the passengers went inside the motel.  As the passengers left the vehicle, one of the passengers lingered and asked Adekale to leave the keys at the front desk for him, and another passenger walked back to the vehicle to get his phone.

¶7     Digre decided to move Adekale to another location to conduct field sobriety tests "for officer safety" because of the number of passengers, because the passengers appeared to have been drinking and were "belligerent and acting out and loud," and because one passenger had lingered around the vehicle before heading to the motel.  Digre informed Adekale three times that he was not under arrest and that he was just "being detained to do [the field sobriety tests] at another location."  Digre handcuffed Adekale, patted him down, placed him in the back seat of the squad car, and drove him for less than one minute to another part of the same parking lot on the north side of the motel, "just on the other side of the

motel." Digre took Adekale's handcuffs off and had Adekale perform the field sobriety tests.

¶8 The circuit court denied Adekale's motion to suppress the evidence obtained after he was transported to the other part of the parking lot for the field sobriety tests. The court found that no facts showed that the transport was unreasonable.

¶9 Adekale subsequently entered his plea and was convicted and sentenced. This appeal follows.

## DISCUSSION

¶10 The issue on appeal is whether Adekale was unreasonably transported for field sobriety tests from the location of the traffic stop in the parking lot on one side of the motel to a different part of the parking lot on the other side of the motel. As I explain, I conclude that Adekale was not unreasonably transported from the part of the parking lot where the traffic stop was initiated to a different part of the parking lot for field sobriety tests because he was transported within the vicinity of the stop and the purpose for transporting him was reasonable.[2]

---

[2] Adekale notes that Digre handcuffed him and placed him into the back of the squad car before transporting him. However, Adekale does not argue that by taking these actions Digre converted the traffic stop into an arrest because a reasonable person in Adekale's position would have believed that the person was in custody. *See State v. Swanson*, 164 Wis. 2d 437, 446-48, 475 N.W.2d 148 (1991) (stating that the test for transforming a stop into an arrest is "whether a reasonable person in the defendant's position would have considered [the person] to be 'in custody,' given the degree of restraint under the circumstances.") (quoted source omitted). Indeed, it is undisputed that Digre explained his actions and told Adekale three times that Adekale was not under arrest. Rather, Adekale argues only that the transport was unreasonable, and that is the only argument that this opinion addresses.

¶11    When an appellate court reviews a decision on a motion to suppress evidence, it upholds the circuit court's findings of historical fact unless they are clearly erroneous. *State v. Blatterman*, 2015 WI 46, ¶16, 362 Wis. 2d 138, 864 N.W.2d 26. However, it independently reviews whether those facts satisfy constitutional principles. *Id.*

¶12    A temporary detention following a traffic stop constitutes a seizure within the meaning of the Fourth Amendment to the United States Constitution and article I, § 11 of the Wisconsin Constitution, and implicates the constitutional protections against unreasonable searches and seizures. *State v. Guzy*, 139 Wis. 2d 663, 674-75, 407 N.W.2d 548 (1987).

¶13    "Pursuant to *Terry v. Ohio*, 392 U.S. 1[, 22] (1968), a police officer may, under certain circumstances, temporarily detain a person for purposes of investigating possible criminal behavior even though there is not probable cause to make an arrest." *Blatterman*, 362 Wis. 2d 138, ¶18. A person who is detained under a *Terry* investigation may be moved "in the general vicinity of the stop without converting what would otherwise be a temporary seizure into an arrest" if (1) the person was moved within the vicinity of the stop, and (2) the purpose in moving the person within the vicinity was reasonable. *State v. Quartana*, 213 Wis. 2d 440, 446, 570 N.W.2d 618 (Ct. App. 1997); *see* WIS. STAT. § 968.24.[3]

---

[3] WISCONSIN STAT. § 968.24 states:

(continued)

¶14     The first prong of the *Quartana* test is whether Adekale was transported within the vicinity of the original stop. *Quartana*, 213 Wis. 2d at 446. "Within the vicinity" means within "'a surrounding area or district,' or 'locality.'" *Id.* at 447. In *Quartana*, the court concluded that transporting Quartana from the location of the stop to the scene of an accident, which was one mile away and within walking distance of the initial location, was within the "vicinity."

¶15     It is undisputed that Adekale was stopped in a parking lot on one side of a motel, and the circuit court found that Adekale was transported to the other side of the motel, "very close" to where Adekale had been stopped. The parties do not dispute that, as Digre testified and one of the videos played at trial showed, the transport took just under one minute of travel time. I conclude that these facts establish that Adekale was transported within the vicinity of the stop.

¶16     The second prong of the *Quartana* test is whether the purpose for transporting Adekale was reasonable. *Id.* at 446. The circuit court credited Digre's testimony that the passengers' conduct while Digre was interacting with Adekale was disruptive. The court found that the passengers left when Digre told them that "he had to do some paperwork," that Digre could not see whether all of the passengers actually entered the motel, and that it was possible that the passengers "could have returned to the scene" if they saw Digre instead

> After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

conducting field sobriety tests. I conclude that Digre's transport of Adekale to the north side of the motel parking lot had the reasonable purpose of ensuring the undisrupted conducting of the field sobriety tests and ensuring the officer's safety.

¶17 Adekale focuses on appeal on the second prong of the *Quartana* test, whether he was transported for a reasonable purpose, and contends that the purpose for transporting him was unreasonable. I now explain why each of Adekale's arguments in support of this contention fail.

¶18 Adekale argues that the circuit court applied the wrong legal standard by considering Digre's subjective view that the transport was reasonable instead of whether the transport was objectively reasonable based on the facts of record. The court did not apply the wrong legal standard. The court properly considered Digre's stated purpose for transporting Adekale along with Digre's testimony, which the court credited, and the facts of record, and concluded that the facts did not show that that the transport was for an unreasonable purpose. Moreover, as stated above, this court reviews whether the facts satisfy the legal principles independently of the circuit court. Accordingly, this argument does not help Adekale.

¶19 Adekale argues that the purpose for transporting him was unreasonable because, unlike in *Quartana*, it was not "the quickest way for the police to confirm or dispel their suspicions." *See id.* at 449 (stating that transporting the defendant from his residence, where an assisting officer found him, to where the investigating officer was at the scene of the accident in which the defendant was involved, "was the quickest way for [the investigating officer] to confirm or dispel [his] suspicions."). Adekale does not explain why the investigating officer's delay here of several minutes in conducting the field

7

sobriety tests suffices to render unreasonable the purpose to ensure that that tests were conducted safely and without disruption.

¶20 Adekale argues that the purpose for transporting him was unreasonable because, also unlike in *Quartana*, Digre did not transport him to a place he had previously been or a place that was public. *See id.* at 450 (concluding that the defendant was not arrested when he was transported from his residence because he was transported to the scene of the accident where he had been earlier and his detention was "public in nature"). Rather, Adekale argues that he was transported to "a secluded location" away from where his passengers had been. Adekale does not explain how the location in the parking lot on the other side of the motel, which was also behind a Pizza Hut, was no less "public in nature" than the location in the same parking lot where he was stopped. In *Quartana*, this court considered, for purposes of determining whether the defendant's detention when the officer returned him to the scene of the accident was an arrest, not whether anyone could see the defendant, but rather whether the scene being on a public street militated against the detention being an arrest. *Id.* This court did not require that the transport be to a public street in order for the transport to be for a reasonable purpose. In any event, Adekale fails to persuade this court that the fact that he was transported to a part of the motel parking lot that may have been less visible to his passengers renders his detention there unreasonable.

¶21 Adekale argues that the purpose for transporting him was unreasonable because "the issue" of the passengers' behavior no longer existed at the time of the transport, rendering Digre's concerns that the passengers would disrupt the field sobriety tests or threaten his safety unfounded. Adekale notes that before he was transported the passengers "remained in the vehicle when they were supposed to and left when they were allowed to leave," and that they had not

during that time posed a threat to Digre's safety. Therefore, Adekale's argument continues, "there was no reason to believe that any of the passengers would have come back and caused a scene or endangered the officers." Moreover, Adekale notes that, if the passengers did do so, Digre was assisted by another officer and was, therefore, neither alone nor vulnerable. However, the possibility of the passengers, who appeared to have been drinking and were disruptive during Digre's initial interactions with Adekale, returning to the scene and resuming their disruptive behavior persisted even after they headed to the hotel. It is not objectively unreasonable to be concerned that at least some of them may have been watching what was going on with Adekale once they left him and may have returned to disrupt Digre's conducting of the field sobriety tests and to threaten his safety.

## CONCLUSION

¶22 For the reasons set forth above, I conclude that the circuit court properly denied Adekale's suppression motion because Adekale was transported within the vicinity of the stop and for a reasonable purpose. Therefore, I affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9