COURT OF APPEALS
DECISION
DATED AND FILED

July 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP1839**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020TR5613

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE REFUSAL OF
NICHOLAS ANTHONY STILWELL:

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

NICHOLAS ANTHONY STILWELL,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dodge County: MARTIN J. DeVRIES, Judge. *Reversed*.

¶1 GRAHAM, J.[1] Nicholas Stilwell appeals a revocation judgment for unlawfully refusing to submit to a chemical test pursuant to Wisconsin's implied consent law, WIS. STAT. § 343.305. Stilwell contends that the evidence at the refusal hearing demonstrates that his arrest was unlawful under the legal framework set forth in *State v. Quartana*, 213 Wis. 2d 440, 570 N.W.2d 618 (Ct. App. 1997). I agree and therefore reverse the revocation judgment. Because I conclude that Stilwell's arrest was not lawful under the *Quartana* framework, I do not address whether the arrest was also unlawful based on the reasoning of this court's recent decision in *State v. Cundy*, 2023 WI App __, __ Wis. 2d __, __ N.W.2d __.

## BACKGROUND

¶2 In the late evening hours of November 1, 2020, City of Juneau police received a report regarding a hit and run. Police suspected that Stilwell was the driver, and eventually arrested him for operating a motor vehicle while intoxicated (OWI). Stilwell refused to consent to chemical testing of his blood pursuant to the State's implied consent law. He was criminally charged with OWI,[2] and he was also issued a civil notice of intent to revoke his operating privilege under WIS. STAT. § 343.305(9)(a) based on his refusal to take a test for intoxication after being arrested for an OWI-related offense.[3] This appeal pertains to the revocation judgment finding that Stilwell unlawfully refused to consent to chemical testing. The following facts are taken from the transcript of the refusal hearing, and are

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

[2] The criminal OWI case pertaining to this same incident is Dodge County case No. 2020CF298, which remains pending in the circuit court.

[3] Throughout this opinion, I use the term "OWI-related offense" to refer to a violation of any of the offenses, including WIS. STAT. §§ 346.63(1), (2), (2m), (6), 940.09, and 940.25, that are enumerated in WIS. STAT. § 343.305(3)(a) and (9)(a)5.a.

supplemented as appropriate with testimony from the hearing on Stilwell's motion to suppress evidence in his OWI case.

¶3     On the night in question, an officer was dispatched to investigate a report that a red truck crashed into a parked vehicle and then drove away.  The officer learned that Stilwell was the registered owner of the truck and proceeded to Stilwell's residence.  Upon arriving at the apartment complex where Stilwell lived, the officer identified the truck and examined it for signs that it had been involved in a collision, but the officer did not find any damage.

¶4     The officer rang the buzzer at the apartment complex, and Stilwell answered the door.  While speaking with Stilwell, the officer observed an odor of intoxicants, glassy and bloodshot eyes, and slurred speech.  Stilwell admitted to having consumed alcohol, but denied that he had been operating his truck.  Stilwell gave the officer and a second officer permission to enter his apartment so that Stilwell could retrieve his driver's license.

¶5     While inside the apartment, the officer continued questioning Stilwell about whether he had been driving.  Stilwell continued to deny driving but the officer suspected that his denials were untruthful.  The officer observed Stilwell remove a set of keys from his pocket, and at some point, the officer determined that the set included a key to Stilwell's truck.  Upon questioning, Stilwell told the officer that he is the only person who drives his truck.

¶6     The officer then had Stilwell perform field sobriety tests, the results of which were consistent with intoxication.  Stilwell was asked to submit to a preliminary breath test, and the result was significantly above the legal limit for operating a vehicle.

¶7 The officer handcuffed Stilwell's hands behind his back and advised him that he was "detained." The officer then placed Stilwell in the back seat of his marked squad car and drove to the scene of the hit and run, which was three minutes away. Stilwell remained handcuffed in the back of the officer's locked squad car for approximately thirty minutes. During that time, the officer inspected the vehicle that had been hit and reviewed security camera footage from a nearby business to "confirm [the officer's] belief" that Stilwell had been the driver. Through that footage, the officer observed a person he identified as Stilwell get into the driver's seat of the truck, drive it in reverse, collide with a parked car, and drive away from the scene.

¶8 The officer informed Stilwell that he was under arrest for operating a motor vehicle while intoxicated. The officer then read Stilwell the statutory "Informing the Accused" script and asked Stilwell to submit to a chemical blood test. *See* WIS. STAT. § 343.305(4). As noted, Stilwell refused to consent to testing, and he was charged with his sixth OWI (a criminal offense) and given a notice of intent to revoke his operating privilege based on his refusal to submit to chemical testing (a civil matter). Stilwell timely requested a hearing on the propriety of the revocation notice. *See* § 343.305(9).

¶9 During the refusal hearing, Stilwell's attorney pursued a line of questioning directed at an issue regarding the timing of Stilwell's arrest. That issue was related in at least some respects to a decision that the circuit court had already made in the separate OWI matter, in response to Stilwell's motion to suppress evidence obtained through an allegedly unlawful arrest. During an earlier hearing on the suppression motion, the court had referred to the motion as a "*Quartana* motion" in reference to a case I discuss in the analysis below. *See Quartana*, 213 Wis. 2d 440. It appears that the court issued a written decision denying the

suppression motion; however, that decision is not included in the appellate record in this case.

¶10   Turning back to the refusal hearing, Stilwell's attorney asked the officer questions related to when the arrest occurred and whether Stilwell had actually been arrested in or outside his apartment, rather than at the scene of the hit and run.  Initially, the circuit court indicated that these questions were not relevant to the issues in a refusal hearing, and that the court had already decided that the arrest was lawful (presumably in response to the suppression motion in the OWI case).  After counsel asked the court to allow him to make a record for the appeal in this case, the court allowed questioning to continue.

¶11   At the conclusion of the refusal hearing, the circuit court denied Stilwell's challenge to the revocation notice.  It found, among other things, that the officer had "probable cause to believe that [Stilwell] violated the impaired driving law" and that Stilwell "was lawfully arrested" for that violation.[4]  The court's analysis on these points was limited to its assessment of probable cause—it explained there were "probably enough" facts known to the officer to arrest Stilwell at the apartment complex, and that there were certainly enough facts known to the officer after he viewed the video footage confirming Stilwell's identity as the driver. The court declined to decide whether the officer actually arrested Stilwell at the apartment complex because, the court said, it was not pertinent to the issues at the refusal hearing.

¶12   The court entered a revocation judgment, which Stilwell appeals.

_____

[4] The circuit court also found that the officer "complied with the duty to inform" by reading Stilwell the Informing the Accused script; and that Stilwell refused to submit to testing. WIS. STAT. § 343.305(9)(a)5.

5

**DISCUSSION**

¶13 When a law enforcement officer arrests a person for an OWI-related offense, the officer may "request the person to provide one or more samples of [their] breath, blood or urine" for the purpose of chemical testing. WIS. STAT. § 343.305(3)(a). If the person refuses to submit to chemical testing, the officer informs them of the State's intent to immediately revoke their operating privileges, § 343.305(9)(a), and that they may request a court hearing on the revocation, § 343.305(9)(a)4.

¶14 The issues that a defendant can raise during a refusal hearing are limited by statute to those set forth in WIS. STAT. § 343.305(9)(a)5. Among other things, a defendant can challenge "whether the officer had probable cause to believe that the person [committed an OWI-related offense]," and "whether the person was lawfully placed under arrest for [an OWI-related offense]." *See* WIS. STAT. § 343.305(9)(a)5.a.; *see also* **State v. Anagnos**, 2012 WI 64, ¶27, 341 Wis. 2d 576, 815 N.W.2d 675. Although these two inquiries may overlap in some respects, they are distinct inquiries. *Id.*, ¶¶26-39. Here, the focus of Stilwell's argument is on the lawfulness of his arrest.

¶15 An arrest is not lawful if it violates the Fourth Amendment. The Fourth Amendment prohibits warrantless seizures of a person at their home, unless a recognized exception to the warrant requirement applies. **Payton v. New York**, 445 U.S. 573, 586-88 (1980). By contrast, a warrantless seizure of a person in a public place may be consistent with the Fourth Amendment, as long as the seizure is reasonable. *Id.* at 587. Officers may arrest a person without a warrant in a public place if there is probable cause to believe that the person committed a crime. *Id.* at 590; *see also* **State v. Blatterman**, 2015 WI 46, ¶34, 362 Wis. 2d 138, 864 N.W.2d

6

26. Alternatively, if an officer reasonably suspects criminal activity but lacks probable cause to arrest, the officer may briefly detain a person for investigative purposes, so long as the detention is reasonable. *See* **Terry v. Ohio**, 392 U.S. 1, 22, (1968); *see also* **State v. Post**, 2007 WI 60, ¶12, 301 Wis. 2d 1, 733 N.W.2d 634; WIS. STAT. § 968.24 (codifying the rule). Courts sometimes refer to these brief investigative detentions as "**Terry** stops."

¶16 It was this last principle that was the focus of our decision in **Quartana**, 213 Wis. 2d 440. In that case, Quartana abandoned his vehicle in a ditch. **Id.** at 443-44. A state trooper located and "temporarily … detained" Quartana at his parents' home, after which the trooper transported Quartana to the scene of his abandoned vehicle so that the investigating officer could conduct field sobriety testing. **Id.** at 444. Applying the **Terry** framework, we concluded that law enforcement reasonably detained Quartana and transported him to the scene in order to continue the investigation. **Id.** at 448-51. We rejected Quartana's argument that the conditions of his temporary detention amounted to an arrest—as we explained, given the circumstances and degree of restraint, Quartana would not have considered himself to be in custody, and therefore, his detention "did not exceed the scope of a **Terry** stop." **Id.** at 449-51. In a footnote, we observed that Quartana had not challenged the legality of the temporary detention on the ground that it occurred at his private residence. **Id.** at 451 n.4.

¶17 In this case, it appears that, in addressing Stilwell's challenge to the revocation notice, the court may have implicitly relied on its understanding of **Terry** and **Quartana** when it determined that the arrest was lawful. For their part, Stilwell and the State both rely on **Terry** and **Quartana** in their appellate briefing.

¶18 Notably, the application of the ***Terry*** and ***Quartana*** legal framework to the facts of this case may be inconsistent with a recent decision of this court that is recommended for publication. *See **Cundy***, __ Wis. 2d __. As was made clear in ***Cundy***, the ***Quartana*** opinion has been misconstrued in at least some instances by members of the bench and bar alike. ***Id.***, ¶¶28-31.

¶19 The underlying facts in ***Cundy*** were similar in at least some respects to the facts of this case. Police suspected Cundy of having been involved in a hit and run. ***Id.***, ¶2. They went to his home to conduct a "knock and talk" investigation; "detained" Cundy at his home without a warrant; transported him to the scene of the crash in the back of a squad car; and then formally arrested him after positively identifying him as the driver of the vehicle. ***Id.*** The circuit court denied Cundy's motion to suppress evidence, and we reversed that decision on appeal. As we explained, "searches and seizures inside a home without a warrant are presumptively unreasonable," ***id.***, ¶24 (citation omitted), and that, absent a warrant exception, "the Fourth Amendment 'prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest,'" ***id.***, ¶21 (citation omitted). We rejected the State's argument that the seizure at Cundy's home comported with the Fourth Amendment because it was "merely a temporary, investigative detention" that fell short of an arrest. ***Id.***, ¶25. The State had relied on ***Quartana*** for that proposition, but, as we explained, reliance on that case was misplaced. ***Id.***, ¶¶28-31 (citing ***Quartana***, 213 Wis. 2d at 451 n.4).

¶20 Here, the circuit court may have made the same mistake that the court made in ***Cundy***. Yet the parties do not address that question in their appellate briefing, and it is not clear that the evidentiary record in this case is sufficiently developed such that I could answer it with confidence. Fortunately, I need not decide whether the alleged "temporary detention" at Stilwell's apartment complex

violated the Fourth Amendment's warrant requirement to resolve this case. Even if I assume without deciding that the legal framework from *Terry* and *Quartana* can be appropriately applied here, the resulting analysis demonstrates that Stilwell's "temporary detention" violated the Fourth Amendment because it went far beyond the permissible scope of detentions authorized by *Terry*.

¶21 Our supreme court recently discussed the nature of *Terry* stops in *State v. Genous*, 2021 WI 50, 397 Wis. 2d 293, 961 N.W.2d 41. There, the court described such stops as "brief" and "limited" detentions that "usually involve[] only temporary questioning," thus constituting "only a minor infringement on personal liberty." *Id.*, ¶7 (citation omitted). As the United States Supreme Court has explained, police may not "seek to verify their suspicions" through unreasonably prolonged detention or "means that approach the conditions of arrest." *Florida v. Royer*, 460 U.S. 491, 499 (1983).

¶22 There was nothing that was "brief" or "limited" about the alleged "temporary detention" of Stilwell in this case. The officer left Stilwell alone in the back of his squad car for approximately thirty minutes, while the officer conducted an investigation. And the infringement on Stilwell's personal liberty cannot be considered "minor"—Stilwell was handcuffed in the back of a locked squad car, under circumstances that appear for all intents and purposes to be comparable to the conditions of an arrest. *Cf. Blatterman*, 362 Wis. 2d 138, ¶¶30-33 (although police may have had a reasonable safety-related purpose for handcuffing Blatterman and restraining him in the back of a squad car based on specific facts that suggested he might pose a danger to police, the circumstances amounted to a custodial arrest because "the level of restraint, duration of custody, and diminishing potential for release amounted to a formal arrest" (citation omitted)).

¶23    In its appellate briefing, the State does not respond to Stilwell's arguments about the duration of custody and level of restraint.  Nor does it argue that there was probable cause to arrest Stilwell at his apartment complex when he was handcuffed and placed in the officer's the squad car.

¶24    Instead, the State cites *Navarette v. California*, 572 U.S. 393 (2014), for the proposition that, because the officer reasonably suspected drunk driving, he was not required to use "less intrusive investigatory techniques." *Id.*, 404 (citation omitted).  This reliance on *Navarette* is misplaced.  That case involved a temporary detention of a suspected drunk driver on the roadside, and stands for the proposition that the officer could stop the vehicle to verify his reasonable suspicion that the driver was intoxicated.  *Id.*  That is, the officer was not required to wait to conduct the traffic stop until the officer observed additional signs of intoxication "because allowing a drunk driver a second chance for dangerous conduct could have disastrous consequences."  *Id.*  This proposition has no application to the investigative detention that occurred in this case, in which Stilwell was safely at home at the time he was detained with no evident intention of driving anywhere.

¶25    "It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."  *Royer*, 460 U.S. at 500.  The State has failed to satisfy this burden.  The State does not cite any case in which a court has concluded that locking a handcuffed suspect in the back of a squad car for thirty minutes is the type of brief and limited detention for investigative purposes that was envisioned in *Terry*.  Because Stilwell's investigative detention violated the Fourth Amendment, his subsequent arrest was not lawful, and the circuit court should have "order[ed] that no action be taken" to revoke Stilwell's

operating privilege. WIS. STAT. § 343.305(9)(d); *see also **Anagnos***, 341 Wis. 2d 576, ¶43.

*By the Court.*—Judgment reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.