**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 13, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

---

**Appeal No. 2024AP898-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CT2119

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

       PLAINTIFF-RESPONDENT,

  V.

BRENDA L. ROSZINA,

       DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: HANNAH C. DUGAN, Judge. *Affirmed*.

¶1 WHITE, C.J. Brenda L. Roszina appeals from her judgment of conviction for Operating with a Prohibited Alcohol Concentration (2nd) and from the May 6, 2024 order denying her motion for postconviction relief. For the following reasons, we affirm.

## BACKGROUND

¶2 On August 3, 2018, at approximately 6:30 p.m., Detective Christopher Heckman of the Hales Corners Police Department responded to a 911 call regarding a reckless or possibly intoxicated driver at the Hale House tavern. The callers reported that they observed the vehicle swerving back and forth and nearly hitting several other vehicles on the road before ending up at the Hale House. When Detective Heckman arrived on scene, he observed a woman, later identified as Roszina, leaning up against a vehicle in the parking lot; she then started to stumble toward the Hale House. Detective Heckman stopped Roszina and asked her how she got to the Hale House; Roszina stated that she had walked there. Detective Heckman observed that Roszina had bloodshot eyes and slurred speech, and smelled strongly of intoxicants. Roszina subsequently admitted to Detective Heckman that she had driven to the Hale House, pointing to her vehicle in the parking lot; the vehicle matched the description and license plate number reported in the 911 call. Roszina also admitted that she drank alcohol while at the State Fair earlier in the day.

¶3 At this point, Detective Heckman asked Roszina to perform standard field sobriety tests. Detective Heckman testified that he was concerned about performing the tests in the Hale House parking lot because there were a lot of cars going in and out, so he asked Roszina if she would be more comfortable performing the tests at the nearby police station, which was approximately one mile away from the Hale House. Roszina agreed, and she was placed in the back of Detective Heckman's squad car. She was not handcuffed, and Detective Heckman told Roszina that she was not under arrest.

¶4     Once at the police station, Detective Heckman had Roszina perform the standard field sobriety tests in the garage; Roszina performed poorly, exhibiting 6 of 6 clues of impairment on the horizontal gaze nystagmus test, 2 of 8 clues on the walk and turn test, and 3 of 4 clues on the one-legged stand test. A preliminary breath test showed that Roszina's breath contained an ethanol concentration of .241g of ethanol per 210L of breath. Roszina also submitted to an Intoximeter breath test, which showed a concentration of .20g of ethanol per 210L of breath.

¶5     Roszina was subsequently charged with Operating a Motor Vehicle while Intoxicated (2nd) and Operating with a Prohibited Alcohol Concentration (2nd). Roszina moved to suppress the evidence related to her arrest on the grounds that she was unlawfully arrested and transported to the police station to conduct the field sobriety tests prior to any probable cause determination. At a hearing on the motion, the circuit court denied Roszina's motion to suppress, finding that Roszina was not effectively placed under arrest when transported from the tavern to the police department. The court also found that Roszina had been moved within the vicinity of where the incident took place.

¶6     The case proceeded to a court trial, wherein Roszina was found guilty of operating with a prohibited alcohol concentration, but not guilty of operating while intoxicated. Roszina filed a motion for postconviction relief, which was denied by the postconviction court. This appeal follows.

## DISCUSSION

¶7     When an appellate court reviews a decision on a motion to suppress evidence, it upholds the circuit court's findings of historical fact unless they are clearly erroneous. *State v. Blatterman*, 2015 WI 46, ¶16, 362 Wis. 2d 138, 864

N.W.2d 26.  We independently review whether those facts satisfy constitutional principles.  *Id.*

¶8     A seizure must be reasonable to comply with the Fourth Amendment of the United States Constitution and article 1, section 11 of the Wisconsin Constitution.  *See State v. Post*, 2007 WI 60, ¶10 n.2, 301 Wis. 2d 1, 733 N.W.2d 634.  It is constitutional for a law enforcement officer to temporarily stop a person based on reasonable suspicion that a crime has been, is being, or will be committed (a "*Terry* stop").  *See State v. Young*, 2006 WI 98, ¶20, 294 Wis. 2d 1, 717 N.W.2d 729 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).  "An investigatory stop, though a seizure, allows police officers to briefly 'detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.'"  *Id.* (citation omitted).

¶9     When a person under investigation pursuant to a *Terry* stop is moved from one location to another, there exists a two-part inquiry: (1) whether the person was moved within the "vicinity" of the incident; and (2) whether the purpose in moving the person within the vicinity was reasonable.  *State v. Quartana*, 213 Wis. 2d 440, 446, 570 N.W.2d 618 (Ct. App. 1997).  Police may not use means that approach the conditions of arrest when seeking to verify or dispel their suspicions in transporting the person.  *Id.* at 448.  "[T]he detention must at all times be temporary and last no longer than necessary to effectuate the purpose of the stop."  *Id.*  "[W]e must determine, given the totality of the circumstances, whether a reasonable person in the suspect's position would not have considered himself or herself to be in custody given the degree of restraint under the circumstances."  *Id.* at 449-50.

¶10    First, Roszina argues that she was effectively under arrest once she was placed in the back of Detective Heckman's squad car and taken to the police station. She points out that Detective Heckman's testimony at the motion hearing demonstrates that she was placed in the squad car prior to performing any field tests whatsoever and transported directly to the police station. Roszina argues that it cannot be said that a reasonable person in her position would feel themselves free to leave after they were removed from the vicinity of their own vehicle, placed in a squad car, and taken directly to the police station.

¶11    We disagree, and conclude that a reasonable person would not have believed themselves to be "in custody" if they were in her position. Detective Heckman asked Roszina if she would be more comfortable performing the field sobriety tests at the police station, and she agreed. While it is true that Roszina was transported in the back of Detective Heckman's squad car, she was never placed in handcuffs and was specifically told by Detective Heckman that she was not under arrest at that time. While a police station is a more institutional setting than a tavern parking lot, Roszina was not taken further into the station than the garage. A reasonable person in Roszina's position would have understood that they were being transported to the police station for the sole purpose of continuing the investigatory stop in a less busy and chaotic location, and that if they were to pass the standardized field sobriety tests, they would be free to leave. We therefore reject Roszina's argument and conclude that she was not effectively under arrest at the time she was taken to the police station.

¶12    Roszina also takes issue with the fact that she was taken to the police station on the basis that the transportation was not reasonable under the circumstances. The circuit court found that Roszina was kept within the "vicinity"

of the incident when she was transported to the police station, and that the transport was reasonable under the circumstances.

¶13 Pursuant to WIS. STAT. § 968.24, a law enforcement officer must conduct an investigation "in the vicinity where the person was stopped." Whether the location of an investigatory detention is within the "vicinity" of the stop is a question of law we review de novo. *Blatterman*, 362 Wis. 2d 138, ¶26 n.9. Further, while an officer may transport a suspect away from the immediate scene of the stop, the officer must have reasonable grounds to do so. Sec. 968.24; *Quartana*, 213 Wis. 2d at 446. Here, Roszina was transported approximately one mile from the Hale House to the Hales Corners police station. Our supreme court has previously found such a distance to be within the "vicinity" of an incident. *See Quartana*, 213 Wis. 2d at 447. We thus conclude that Roszina was kept within the "vicinity" of the scene of the incident.

¶14 Finally, Roszina argues that it was unreasonable for her to be placed in the back of Detective Heckman's squad car and taken to the police station. She points to testimony by Detective Heckman wherein he admitted that he may have been able to find a place in the parking lot or nearby to perform the field sobriety tests. She further points out that there were no victim identification concerns, security or safety concerns, or any requirement for on-the-scene identification that would make her transportation to the station reasonable.

¶15 Again, we reject Roszina's argument. Detective Heckman testified that there were many cars coming in and out of the Hale House parking lot. It was a "very public area, right off a major highway, and there [were] several vehicles coming and going, people walking around[.]" Again, we point out, Roszina was asked if she would be more comfortable performing the field sobriety tests at the

police station, and she agreed. Based on these considerations, we agree with the circuit court's determination that the transportation from the scene of the incident to the police station was reasonable.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.