# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2022AP540-CR |

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GREGORY L. CUNDY,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | July 13, 2023 |
| Submitted on Briefs: | March 9, 2023 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Kloppenburg, and Graham, JJ. |
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas B. Aquino*, assistant state public defender of Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kieran M. O'Day*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

July 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP540-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF206

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GREGORY L. CUNDY,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dodge County: MARTIN J. DE VRIES, Judge. *Reversed and cause remanded for further proceedings*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

¶1 KLOPPENBURG, J. Gregory Cundy appeals the judgment convicting him, after a jury trial, of operating while intoxicated and obstructing an

officer. Specifically, he challenges the circuit court's pretrial rulings denying his motions to suppress evidence and for reconsideration.

¶2 The charges arose from law enforcement's investigation of a hit-and-run collision. The investigating officer learned of a report that Cundy's vehicle hit a stationary vehicle while trying to park on the street in Mayville. The officer went to Cundy's single-family residence and questioned Cundy through the front doorway of the house. During the questioning, the officer denied Cundy's request to terminate the encounter, asked a few more questions, and then commanded Cundy to leave his home, placed Cundy in the officer's squad car, and drove Cundy to the scene of the hit-and-run. The witness who reported seeing the hit-and-run identified Cundy, who was sitting in the back seat of the squad car, as the driver of the vehicle that the witness saw hit the stationary vehicle, and the officer drove Cundy back to his home. After more questioning, the officer handcuffed Cundy and subsequently obtained a warrant for a blood draw.

¶3 On appeal, Cundy argues that he was seized when the officer denied his request to terminate the encounter with the officer at the doorway of his home and that he is entitled to suppression of all evidence derived from that seizure because: (1) the warrantless seizure violated his Fourth Amendment rights; and (2) the officer lacked probable cause to arrest him for a crime.

¶4 We conclude that, as Cundy argues and the State concedes, the officer seized Cundy at his home under the Fourth Amendment when the officer denied Cundy's request to terminate the encounter at the doorway of Cundy's home. We also conclude that the warrantless seizure violated the Fourth Amendment's protection against warrantless seizures of a person at the person's home. We further conclude that Cundy is entitled to suppression of all evidence derived from the

seizure because the State does not dispute that the officer lacked probable cause to arrest Cundy for a crime. Further, the State does not refute Cundy's position that the evidence that must be suppressed includes all of Cundy's statements after the officer denied Cundy's request to terminate the encounter, the witness's initial and subsequent in-court identification of Cundy, and the results of the blood draw.

¶5 Accordingly, we reverse the judgment of conviction and remand for further proceedings.

## BACKGROUND

¶6 At the hearing on Cundy's motion to suppress, the parties stipulated to certain facts, the officer and Cundy testified, the officer's squad car video was offered and received into evidence, and portions of the video were played. The following undisputed facts supporting the circuit court's factual findings are taken from the stipulated facts and evidence at the hearing.

¶7 At 9:35 p.m. on July 2, 2019, a person ("the witness") called the Mayville Police Department and reported having seen, about ten to fifteen minutes earlier, a vehicle back into a stationary vehicle on a street in Mayville and then drive away. The investigating officer arrived at the scene five minutes after the call was made. The officer talked to the witness, who said that he had seen a vehicle back up as if to park, while travelling at "idle speed," hit a parked car, and then drive away. The witness described both the driver and the vehicle that drove away, and provided what he said was its license plate. The officer learned that the license plate came back to a black Ford Fusion that was registered to Cundy. The officer drove to Cundy's single-family residence, which was a few blocks away, and arrived there about forty minutes after the collision reported by the witness had occurred.

¶8     The officer saw a black Ford Fusion fitting the description of the vehicle parked up against the garage, in front of another vehicle in the driveway, such that the Fusion would have arrived before the other vehicle. The officer walked up to and knocked on Cundy's front door. He ended up knocking for about two or three minutes. Cundy's partner answered the door and, in response to the officer's questions, told the officer that Cundy had been home for "a while … longer than" a half hour and called Cundy to the door. Cundy came and stood in the doorway, holding the screen door open, and the officer stood on the front stoop facing Cundy. Cundy appeared to be groggy and slightly off balance, and had a strong odor of intoxicants, slurred speech, and glossy eyes. Cundy told the officer that he had not been driving on the street where the collision had occurred at the time of the collision, had been asleep in his chair, and had been home for a couple of hours. After two minutes of further questioning by the officer, Cundy asked, "Are we done here?" and the officer responded, "No, we're not." We pause to note that this is the moment when, the parties now agree, the officer seized Cundy.

¶9     The following exchange ensued:

> Cundy: What's up?
>
> Officer: Okay, an incident happened down there. Alright I'm trying to get your side of the story so I don't think you're just some person that would cause a disturbance and flee a scene. So I'm giving you the opportunity to tell me what happened.
>
> Cundy: What disturbance?
>
> Officer: Okay. You tell me. Cause you say you were sitting here but I've got somebody that puts you down there about a half hour ago.
>
> Cundy: No, sir.
>
> Officer: Okay not at all. Were you driving your vehicle at all during the last hour?

> Cundy: No.
>
> Officer: Okay. How much have you had to drink tonight?
>
> Cundy: Quite a few.
>
> Officer: Quite a few? Okay. So if I take you down by the witness, they're going to tell me nope that wasn't him?
>
> Cundy: What's going on?
>
> Officer: Okay, I'm gonna need to you to step out here for me.

¶10 At this point the officer, as he later testified, "commanded" Cundy to "step out" of his home and Cundy complied. The officer took Cundy to the officer's squad car and placed Cundy in the back seat. The officer explained to Cundy that the officer would not be placing him in handcuffs. The officer then drove back to the scene of the collision and called the witness on the phone. The witness returned to the scene and identified Cundy as the driver of the car that had been in the collision and driven away.

¶11 The officer then drove Cundy back to his home and he and Cundy got out of the squad car. The officer resumed questioning Cundy about the collision and, after Cundy refused to perform field sobriety tests, arrested him for operating while intoxicated and placed him in handcuffs. Throughout the encounter, Cundy never admitted to driving the vehicle involved in the collision.

¶12 The officer subsequently applied for and obtained a warrant for a blood draw. In the application, the officer referred to Cundy's statements to the officer after the "Are we done here?" exchange and the witness's identification of Cundy.

¶13     The State charged Cundy with operating a vehicle while intoxicated and with a prohibited alcohol content, and with obstructing an officer.  Cundy filed a motion to suppress, asserting that: (1) he was unlawfully seized without a warrant or probable cause at his home in violation of his Fourth Amendment rights; (2) the State obtained statements without providing the ***Miranda***[1] warnings to him in violation of his Fifth Amendment rights; and (3) the witness's identification of Cundy was unduly suggestive in violation of his due process rights.[2]

¶14     After the hearing on the motion, the circuit court ruled that the officer had reasonable suspicion to investigate Cundy for the hit-and-run and operating while intoxicated when the officer talked with Cundy at the doorway to Cundy's home, and that the investigation that justified the continuing detention lasted until the officer placed Cundy in handcuffs.  On these grounds, the court denied Cundy's motion to suppress.  Cundy filed a motion for reconsideration, which the court also denied.

¶15     At the jury trial that followed, the State introduced Cundy's statements to the officer before Cundy was handcuffed, the witness's identification of Cundy, and the results of the blood draw.  The witness also identified Cundy at trial.  The jury found Cundy guilty of all three charges.  Cundy was convicted of the

---

[1] *See **Miranda v. Arizona***, 384 U.S. 436 (1966).

[2] Cundy reargues all three issues on appeal.  We do not reach the ***Miranda*** and identification issues because Cundy does not seek suppression of any additional evidence via those issues beyond the evidence that he seeks to suppress under the warrantless seizure issue.  Therefore, our conclusion as to the warrantless seizure issue is dispositive.  *See **Cholvin v. DHFS***, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118 (declining to reach other issues raised where one issue disposed of the appeal).

operating while intoxicated and obstructing charges, and the operating with a prohibited alcohol content charge was dismissed and read in at his sentencing.

¶16 Cundy appeals the denial of his pretrial motions to suppress and for reconsideration, seeking an order vacating his conviction because it is based on evidence that the circuit court should have suppressed.[3]

## DISCUSSION

¶17 As stated, Cundy argues that he was seized when the officer denied his request to terminate the encounter with the officer at the doorway of his home and that he is entitled to suppression of all evidence derived from that seizure because: (1) the warrantless seizure violated his Fourth Amendment rights; and (2) the officer lacked probable cause to arrest him for a crime.

### I. Applicable Standard of Review and Legal Principles

¶18 "Whether evidence should be suppressed is a question of constitutional fact subject to a two-step inquiry." *State v. Wilson*, 2022 WI 77, ¶17, 404 Wis. 2d 623, 982 N.W.2d 67. "First, we will uphold a circuit court's findings of fact unless they are clearly erroneous." *Id.*, ¶18. "Second, the application of

---

[3] We offer the following timeline to explain the passage of time in the resolution of this appeal. The circuit court denied Cundy's pretrial motions in March and April 2020 and entered the judgment of conviction in July 2021. Cundy was released from prison to extended supervision after completing the Earned Release Program in February 2022. New appellate counsel was subsequently appointed and timely filed the notice of appeal in April 2022. After the parties were granted several extensions, they completed their appellate briefing in January 2023 and the appeal was submitted to this court for consideration and determination on the briefs in March 2023.

constitutional principles to those facts presents a question of law that we review independently of the … circuit court[.]" *Id.*

¶19    Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; WIS. CONST. art. I, § 11.[4]  Our supreme court has recognized this protection as "one of the core constitutional guarantees found in the United States Constitution." *Wilson*, 404 Wis. 2d 623, ¶19. The Fourth Amendment "was drafted in part to codify 'the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.'" *State v. Scull*, 2015 WI 22, ¶19, 361 Wis. 2d 288, 862 N.W.2d 562 (quoting *Payton v. New York*, 445 U.S. 573, 601 (1980)).  "[W]hen it comes to the Fourth Amendment, the home is first among equals.  At the Amendment's 'very core' stands 'the right of a [person] to retreat into [the person's] own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)); *Wilson*, 404 Wis. 2d 623, ¶19.  The Fourth Amendment's protection extends to the curtilage of one's home, the area "'immediately surrounding and associated with the home.'" *Id.*, ¶20 (quoting *Oliver v. United States*, 466 U.S. 170, 184 (1984)).

¶20    Law enforcement may use the investigative technique referred to as a "knock and talk" in entering a person's constitutionally protected curtilage.  *Wilson*,

---

[4] The Fourth Amendment is made applicable to the states by the Fourteenth Amendment. *State v. Kramer*, 2009 WI 14, ¶18 and n.6, 315 Wis. 2d 414, 759 N.W.2d 598.  The current approach in Wisconsin is to interpret art. I, § 11 of the Wisconsin Constitution "consistently with the Fourth Amendment." *State v. Richter*, 2000 WI 58, ¶27, 235 Wis. 2d 524, 612 N.W.2d 29; *State v. Felix*, 2012 WI 36, ¶4, 339 Wis. 2d 670, 811 N.W.2d 775 ("We continue our usual practice of interpreting Article I, Section 11 of the Wisconsin Constitution in accord with the United States Supreme Court's interpretation of the Fourth Amendment.").

404 Wis. 2d 623, ¶21. "A 'knock and talk' investigation is not a search but instead is an investigative technique premised on the implicit license that a visitor, or neighbor, would have with regard to entering one's curtilage." *Id.*

¶21 However, absent exigent circumstances, the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton*, 445 U.S. at 576, 590. Pertinent here, when a person does not wish to continue talking with the police at the person's home but is required by the police to do so, that person is "seized" if a reasonable person would not "feel free to decline the officers' requests or otherwise terminate the encounter." *City of Sheboygan v. Cesar*, 2010 WI App 170, ¶13, 330 Wis. 2d 760, 796 N.W.2d 429 (citing *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). A home's occupant is free to elect not to speak to the police "and may refuse to answer any questions at any time." *Kentucky v. King*, 563 U.S. 452, 469-70 (2011).

¶22 "Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is generally inadmissible in court proceedings." *Scull*, 361 Wis. 2d 288, ¶20. However, the exclusionary rule does not apply to evidence obtained outside of the home when "the police have probable cause to arrest the [person] for committing a crime." *New York v. Harris*, 495 U.S. 14, 17, 21 (1990). Thus, while seizing a defendant at the defendant's home without a warrant violates the Fourth Amendment, evidence obtained while the defendant is in custody outside the defendant's home—even though the seizure was unlawful—does not require suppression when the police have probable cause to arrest the defendant for committing a crime. *Id.*; *State v. Felix*, 2012 WI 36, ¶¶4, 38, 51, 339 Wis. 2d 670, 811 N.W.2d 775 ("adopt[ing] the *Harris* exception to the exclusionary rule").

## II. Analysis

¶23    The parties agree that the relevant interaction here was between Cundy and the officer when Cundy was standing in the doorway of his home (in his home) and the officer was standing on the front stoop right outside (on the curtilage). Further, the parties agree that the officer seized Cundy at the moment he denied Cundy's request to terminate the encounter at his home. At that moment, as both parties assert, the officer conveyed the message that Cundy was required to comply with the officer's continued questioning and was not free to otherwise terminate the encounter. *See* **Bostick**, 501 U.S. at 437-38 ("no seizure occurs when police ask questions of an individual … so long as the officers do not convey a message that compliance with their requests is required" such that a reasonable person would not believe that the person was "free to decline the officers' requests or otherwise terminate the encounter"). The issues in dispute are whether the warrantless seizure at that moment violated the Fourth Amendment and whether the probable cause exception to the exclusionary rule applies to the evidence resulting from the seizure. We address the two disputed topics in turn.

### A. *Whether the warrantless seizure violated the Fourth Amendment*

¶24    Cundy argues that the officer's warrantless seizure of Cundy at Cundy's home violated the Fourth Amendment under **Payton**. The State does not directly engage with this proposition or the well-established law on which it is based, summarized above. As stated, under **Payton**, 445 U.S. at 586, "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." "A person is considered 'seized' if a reasonable person would not feel free to leave or terminate the

conversation with an officer." *City of Sheboygan*, 330 Wis. 2d 760, ¶13 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

¶25    Rather than engaging with *Payton*, the State argues that the officer's seizure of Cundy did not violate the Fourth Amendment's protection against warrantless seizures in a person's home or on the home's curtilage because it was "merely a temporary, investigative detention" that did not amount to an arrest. Therefore, the State contends, the seizure needed only to be supported by reasonable suspicion.  We now explain why that argument lacks merit.

¶26    The State's argument is comprised of two propositions.  The first proposition is that the Fourth Amendment protections articulated in *Payton* apply only to conduct by police that effectuates an arrest, and the protections do not extend to other seizures that fall short of an arrest.  Thus, this proposition continues, the *Payton* protections do not apply here because the degree of restraint at the time that the officer denied Cundy's request to terminate the encounter would not have communicated to a reasonable person in Cundy's position that the person was under arrest.  The State cites no law supporting the proposition that *Payton* does not apply to a seizure at a person's home that does not amount to an arrest.  To the contrary, the *Payton* court provides a broad interpretation of the protections provided by the Fourth Amendment, noting "that the warrantless arrest of a person is a species of seizure required by the Amendment to be reasonable." *Payton*, 445 U.S. at 585. Thus, the Amendment's protections are not limited only to arrests, but extend to all seizures unless qualified by subsequent case law.

¶27    Moreover, the State does not cite to case law that could support a limitation on the protections in this context.  More specifically, the State cites no case law supporting the proposition that an officer may conduct a "knock and talk"

11

and then seize the person without a warrant when the individual comes to the door and the officer refuses the person's request to terminate the encounter, in the absence of a warrant exception such as exigent circumstances. "If that were the case, it would upend four decades of Fourth Amendment jurisprudence as it relates to the [home and] curtilage." *See State v. Gajewski*, No. 2020AP7-CR, unpublished slip op. ¶32 (WI App Aug. 2, 2022) (rejecting the State's position in that case "that officers may conduct a 'knock and talk' and then arrest the person without a warrant when the individual comes to the door, stands within the home's curtilage, and exposes himself or herself to public view, absent a warrant exception").[5] While this court in *Gajewski* was addressing a warrantless arrest, its response to the State's argument in that case applies equally to the State's effort in this case to distinguish an arrest from a seizure in a person's home or curtilage without a warrant.

¶28    The State seems to suggest that this court's decision in *State v. Quartana*, 213 Wis. 2d 440, 570 N.W.2d 618 (Ct. App. 1997), authorizes a warrantless seizure of a person in the person's home or curtilage if the seizure falls short of an arrest. In that case, this court ruled that police may move a person under a *Terry*[6] investigation to a location in the general vicinity of a stop without converting what would otherwise be a temporary detention into an arrest, if it is for a reasonable purpose. *Quartana*, 213 Wis. 2d at 443, 446. However, the State's reliance on that case is misplaced.

---

[5] *See* WIS. STAT. RULE 809.23(3)(b) (2021-22) (an unpublished opinion authored by a single judge and issued after July 1, 2009, may be cited for its persuasive value). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[6] *Terry v. Ohio*, 392 U.S. 1, 22 (1968) ("[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.").

¶29    In ***Quartana***, this court interpreted WIS. STAT. § 968.24, which "codified the constitutional standard established in ***Terry***." ***Quartana***, 213 Wis. 2d at 445. We determined that, "[b]y its express language, § 968.24, STATS., authorizes the police to move a suspect short distances during the course of a temporary investigation." ***Id.*** at 446. We construed that authority to extend to the movement of a person under investigation pursuant to a ***Terry*** stop from one location to another if the person was moved in the vicinity and for a reasonable purpose. ***Id.***

¶30    We assume that the State cites ***Quartana*** because the defendant in that case "was initially questioned at his home and was then transported by police" to the scene of an accident that the police were investigating. ***Id.*** at 443. However, Quartana argued only that, when the police transported him to the accident scene, they arrested him without probable cause in violation of WIS. STAT. § 968.24. ***Id.*** He did not argue that the police violated the Fourth Amendment's warrant requirement when the police seized him at his home without a warrant. This court noted that "the statute requires the stop of the person to be in a public place," and that the parties did not "raise[] nor brief[]" the issue of whether the statute, and ***Terry***, apply "when the detainee is in a private residence." ***Quartana***, 213 Wis. 2d at 451 n.4. This court expressly stated that "The issue is reserved for some future case." ***Id.***

¶31    In sum, ***Quartana*** addresses the specific issue of whether police exceed the scope of a ***Terry*** stop by moving a person under investigation from the location of the stop to another location, thereby converting a temporary detention into an arrest requiring probable cause. However, ***Quartana*** does not address the issue of whether a warrantless seizure at a person's home violates the Fourth Amendment. Accordingly, ***Quartana*** provides no support for the State's proposition that the Fourth Amendment's protection against the seizure of a person

in the person's home or curtilage does not extend to seizures that do not amount to arrests.

¶32    The second proposition comprising the State's argument is that there is a "reasonable suspicion exception" for seizures in the home or the curtilage. The State appears to rely on law applicable to the authority of law enforcement to temporarily detain a person pursuant to *Terry* based on the reasonable suspicion that the person has committed, is committing, or will commit an offense. However, the State cites no legal authority to support this proposition.

¶33    We are persuaded by the discussion in a non-precedential opinion of this court that explicitly rejects the State's reasonable suspicion argument in the context of a warrantless seizure of a person in the person's home or curtilage. In *State v. Bertrand*, No. 2019AP1240-CR, unpublished slip op. ¶¶12-13 (WI App Feb. 26, 2020) (footnote omitted), we stated:

> For the sake of our analysis, we will accept that the officer had reasonable suspicion [of operating while intoxicated because] it clarifies the point we wish to make, which is that reasonable suspicion does not create an exception to the warrant requirement under the Fourth Amendment for an in-home search or seizure under these circumstances. The State cites to *Terry v. Ohio*, 392 U.S. 1, 22 (1968) for the proposition that officers are allowed "to perform brief investigations with less than probable [cause] to determine if a person has committed a crime." *Terry* does not authorize an officer to enter a private home. *See, e.g.*, *Moore v. Pederson*, 806 F.3d 1036, 1054 (11th Cir. 2015) ("Home may be where the heart is, but it cannot be where the government is—at least for purposes of conducting a *Terry*-like stop [….]" (footnote omitted)); *United States v. Perea-Rey*, 680 F.3d 1179, 1188 (9th Cir. 2012) ("[T]he *Terry* exception to the warrant requirement does not apply to in-home searches and seizures." (citation omitted)).

¶34    This reasoning applies here. Further, the State fails to cite any law supporting its argument that there is a reasonable suspicion exception to the warrant requirement under the Fourth Amendment for a person's seizure in the person's

home or curtilage. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.**,* 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (internal citation omitted)).

¶35    In sum, the State fails to refute Cundy's argument that the officer's seizure of him while he was at his home violated his Fourth Amendment rights.

*B. Whether the probable cause exception to the exclusionary rule applies*

¶36    As stated, the ***Harris*** exception to the exclusionary rule applies only when "police had probable cause to arrest" the defendant for a crime before the arrest of that person at the person's home. ***State v. Felix***, 339 Wis. 2d 670, ¶42; *see also **State v. Ferguson**,* 2009 WI 50, ¶29, 317 Wis. 2d 586, 767 N.W.2d 187 (requiring that there be probable cause to believe that the defendant committed a jailable offense). Cundy argues that the officer lacked probable cause to arrest Cundy for committing a crime.[7] The State does not respond to Cundy's probable cause argument. The State's failure to respond is fatal to any argument it means to make on this issue, and we take the State's failure to brief the issue as a tacit admission that Cundy is correct. *See **Hoffman v. Economy Preferred Ins. Co.**,* 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590 (stating that arguments to which no response is made may be deemed conceded for purposes of appeal); ***State v. Anker***, 2014 WI App 107, ¶¶2, 13, 357 Wis. 2d 565, 855 N.W.2d 483 (deeming

---

[7] The officer testified at the suppression hearing that, when he questioned Cundy at the doorway of Cundy's home, he was investigating a hit-and-run. As Cundy notes, a hit-and-run causing property damage to another car results in a forfeiture. WIS. STAT. §§ 346.68 and 346.74(3). "Conduct punishable only by a forfeiture is not a crime." WIS. STAT. § 939.12. Consistent with this authority, the officer testified that the hit-and-run he was investigating when he confronted Cundy at his home was not a crime.

the State to have conceded the issue of probable cause when it did not respond to the defendant's argument that his arrest was not supported by probable cause).

¶37    The State in a footnote suggests that, even if the *Harris* exception to the exclusionary rule does not apply because the officer lacked probable cause to arrest Cundy for a crime when the officer seized Cundy, exclusion is nevertheless unwarranted because there is no evidence of misconduct by the officer.  The State cites *State v. Burch*, 2021 WI 68, ¶17, 398 Wis. 2d 1, 961 N.W.2d 314, *cert. denied*, *Burch v. Wisconsin*, 142 S. Ct. 811 (2022), which states, "[E]xclusion is warranted only where there is some present police misconduct, and where suppression will appreciably deter that type of misconduct in the future."  We reject this suggestion because it is not a developed argument that explains, with cites to relevant legal authority, that this language in *Burch* is intended to alter the *Harris* rule adopted in *Felix*.  *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988) (We need not consider arguments which are "unexplained and undeveloped.").

¶38    Moreover, our supreme court in *Felix* noted that the purpose of the exclusionary rule is to deter police misconduct and expressly stated that "[t]he *Harris* rule appropriately balances" that purpose "and the *Payton* rule with the social costs associated with suppressing evidence."  *Felix*, 339 Wis. 2d 670, ¶39 (adding, "The *Payton* rule was premised on the Fourth Amendment's protection of the 'sanctity of the home.'  *Payton*, 445 U.S. at 588-89, 601; *Harris*, 495 U.S. at 17.").  The State does not address this language in *Felix*.  Based on the concessions made by the State in this appeal, the officer violated Cundy's Fourth Amendment rights in seizing him and the State fails to explain why the ordinary rule of exclusion is not an appropriate remedy here.

¶39    We now turn to the substance of the evidence that must be suppressed as a result of the unlawful seizure of Cundy at his home. Cundy argues that it includes all of Cundy's statements made after the denial of his request to terminate the encounter while standing in his doorway, the witness's contemporaneous identification of Cundy in the squad car, Cundy's statements when the officer brought him back to his home and further questioned him, the blood draw results, and the witness's in-court identification of Cundy. The State does not refute Cundy's enumeration of the evidence that must be suppressed. Accordingly, we deem the State to have conceded that Cundy correctly enumerates the evidence to be suppressed and, accordingly, determine that the prosecution may not offer any of this evidence in any potential future proceedings in this case.[8]

## CONCLUSION

¶40    For the reasons stated, we conclude that Cundy was seized when the officer denied his request to terminate his encounter with the officer at the doorway of his home and that he is entitled to suppression of all evidence derived from that seizure because:  (1) the warrantless seizure violated his Fourth Amendment rights; and (2) the officer lacked probable cause to arrest him for a crime. Accordingly, we reverse the judgment of conviction and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

---

[8] The parties on appeal do not present any argument about the potential for the prosecution to pursue the pending charges, based on lawfully obtained evidence, following the circuit court's entry of an order vacating the judgment of conviction and we express no views on that topic.